## SORRELLS *v.* UNITED STATES.

No. 177.  Argued November 8, 1932.—Decided December 19, 1932.

436

*Mr. John Y. Jordan, Jr.,* with whom *Mr. A. Hall Johnston* was on the brief, for petitioner.

*Solicitor General Thacher,* with whom *Messrs. Whitney North Seymour* and *John J. Byrne* were on the brief, for the United States.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

Defendant was indicted on two counts (1) for possessing and (2) for selling, on July 13, 1930, one-half gallon of whiskey in violation of the National Prohibition Act. He pleaded not guilty. Upon the trial he relied upon the defense of entrapment. The court refused to sustain the defense, denying a motion to direct a verdict in favor of defendant and also refusing to submit the issue of entrapment to the jury. The court ruled that " as a matter of law " there was no entrapment. Verdict of guilty followed, motions in arrest, and to set aside the verdict as contrary to the law and the evidence, were denied, and defendant was sentenced to imprisonment for eighteen

months.   The Circuit Court of Appeals affirmed the judgment, 57 F. (2d) 973, and this Court granted a writ of certiorari limited to the question whether the evidence was sufficient to go to the jury upon the issue of entrapment.

The Government, while supporting the conclusion of the court below, also urges that the defense, if available, should have been pleaded in bar to further proceedings under the indictment and could not be raised under the plea of not guilty.   This question of pleading appropriately awaits the consideration of the nature and grounds of the defense.

The substance of the testimony at the trial as to entrapment was as follows: For the Government, one Martin, a prohibition agent, testified that having resided for a time in Haywood County, North Carolina, where he posed as a tourist, he visited defendant's home near Canton, on Sunday, July 13, 1930, accompanied by three residents of the county who knew the defendant well.   He was introduced as a resident of Charlotte who was stopping for a time at Clyde.   The witness ascertained that defendant was a veteran of the World War and a former member of the 30th Division A. E. F.   Witness informed defendant that he was also an ex-service man and a former member of the same Division, which was true.   Witness asked defendant if he could get the witness some liquor and defendant stated that he did not have any.   Later, there was a second request without result.   One of those present, one Jones, was also an ex-service man and a former member of the 30th Division, and the conversation turned to the war experiences of the three.   After this, witness asked defendant for a third time to get him some liquor, whereupon defendant left his home and after a few minutes came back with a half gallon of liquor for which the witness paid defendant five dollars.   Martin also testified that he was " the first and only person among those pres-

ent at the time who said anything about securing some liquor," and that his purpose was to prosecute the defendant for procuring and selling it. The Government rested its case on Martin's testimony.

Defendant called as witnesses the three persons who had accompanied the prohibition agent. In substance, they corroborated the latter's story but with some additions. Jones, a railroad employee, testified that he had introduced the agent to the defendant " as a furniture dealer of Charlotte," because the agent had so represented himself; that witness told defendant that the agent was " an old 30th Division man " and the agent thereupon said to defendant that he " would like to get a half gallon of whiskey to take back to Charlotte to a friend of his that was in the furniture business with him," and that defendant replied that he " did not fool with whiskey "; that the agent and his companions were at defendant's home " for probably an hour or an hour and a half and that during such time the agent asked the defendant three or four or probably five times to get him, the agent, some liquor." Defendant said " he would go and see if he could get a half gallon of liquor " and he returned with it after an absence of " between twenty and thirty minutes." Jones added that at that time he had never heard of defendant being in the liquor business, that he and the defendant were " two old buddies," and that he believed " one former war buddy would get liquor for another."

Another witness, the timekeeper and assistant paymaster of the Champion Fibre Company at Canton, testified that defendant was an employee of that company and had been " on his job continuously without missing a pay day since March, 1924." Witness identified the time sheet showing this employment. This witness and three others who were neighbors of the defendant and had known him for many years testified to his good character.

To rebut this testimony, the Government called three witnesses who testified that the defendant had the general reputation of a rum-runner. There was no evidence that the defendant had ever possessed or sold any intoxicating liquor prior to the transaction in question.

It is clear that the evidence was sufficient to warrant a finding that the act for which defendant was prosecuted was instigated by the prohibition agent, that it was the creature of his purpose, that defendant had no previous disposition to commit it but was an industrious, law-abiding citizen, and that the agent lured defendant, otherwise innocent, to its commission by repeated and persistent solicitation in which he succeeded by taking advantage of the sentiment aroused by reminiscences of their experiences as companions in arms in the World War. Such a gross abuse of authority given for the purpose of detecting and punishing crime, and not for the making of criminals, deserves the severest condemnation, but the question whether it precludes prosecution or affords a ground of defense, and, if so, upon what theory, has given rise to conflicting opinions.

It is well settled that the fact that officers or employees of the Government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution. Artifice and stratagem may be employed to catch those engaged in criminal enterprises. *Grimm* v. *United States,* 156 U. S. 604, 610; *Goode* v. *United States,* 159 U. S. 663, 669; *Rosen* v. *United States,* 161 U. S. 29, 42; *Andrews* v. *United States,* 162 U. S. 420, 423; *Price* v. *United States,* 165 U. S. 311, 315; *Bates* v. *United States,* 10 Fed. 92, 94, note, p. 97. *United States* v. *Reisenweber,* 288 Fed. 520, 526; *Aultman* v. *United States,* 289 Fed. 251.[1] The appropriate object of this permitted activity, frequently essential to the enforcement of the law, is to

---

[1] See, also, *Regina* v. *Williams,* 1 Car. & K. 195; *People* v. *Mills,* 178 N Y. 274; 70 N. E. 786; *People* v. *Ficke,* 343 Ill. 367; 175 N. E. 543.

reveal the criminal design; to expose the illicit traffic, the prohibited publication, the fraudulent use of the mails, the illegal conspiracy, or other offenses, and thus to disclose the would-be violators of the law. A different question is presented when the criminal design originates with the officials of the Government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute.

The Circuit Court of Appeals reached the conclusion that the defense of entrapment can be maintained only where, as a result of inducement, the accused is placed in the attitude of having committed a crime which he did not intend to commit, or where, by reason of the consent implied in the inducement, no crime has in fact been committed. 57 F. (2d) p. 974. As illustrating the first class, reference is made to the case of a sale of liquor to an Indian who was disguised so as to mislead the accused as to his identity. *United States* v. *Healy,* 202 Fed. 349; *Voves* v. *United States,* 249 Fed. 191. In the second class are found cases such as those of larceny or rape where want of consent is an element of the crime. *Regina* v. *Fletcher,* 8 Cox C. C. 131; *Rex* v. *McDaniel,* Fost. 121, 127, 128; *Connor* v. *People,* 18 Colo. 373; 33 Pac. 159; *Williams* v. *Georgia,* 55 Ga. 391; *United States* v. *Whittier,* 5 Dill. 35; *State* v. *Adams,* 115 N. C. 775; 20 S. E. 722. There may also be physical conditions which are essential to the offense and which do not exist in the case of a trap, as, for example, in the case of a prosecution for burglary where it appears that by reason of the trap there is no breaking.[2] *Rex* v. *Egginton,* 2 Leach C. C. 913; *Regina* v. *Johnson,* Car. & Mar. 218; *Saunders* v. *People,* 38 Mich 218; *People* v. *McCord,* 76 Mich. 200; 42 N. W. 1106; *Allen* v. *State,* 40 Ala. 334; *Love* v. *People,* 160 Ill.

---

[2] See note of Francis Wharton to *Bates* v. *United States,* 10 Fed. 97–99.

501; 43 N. E. 710. But these decisions applying accepted principles to particular offenses, do not reach, much less determine, the present question. Neither in reasoning nor in effect do they prescribe limits for the doctrine of entrapment.

While this Court has not spoken on the precise question (see *Casey* v. *United States,* 276 U. S. 413, 419, 423 [3]), the weight of authority in the lower federal courts is decidedly in favor of the view that in such case as the one before us the defense of entrapment is available. The Government concedes that its contention, in supporting the ruling of the Circuit Court of Appeals, is opposed by decisions in all the other Circuits except the Tenth Circuit, and no decision in that Circuit suggesting a different view has been brought to our attention. See *Capuano* v. *United States* (C. C. A. 1st), 9 F. (2d) 41, 42; *United States* v. *Lynch* (S. D. N. Y., Hough, J.), 256 Fed. 983, 984; *Lucadamo* v. *United States* (C. C. A. 2d), 280 Fed. 653, 657, 658; *Zucker* v. *United States* (C. C. A. 3d), 288 Fed. 12, 15; *Gargano* v. *United States* (C. C. A. 5th), 24 F. (2d) 625, 626; *Cermak* v. *United States* (C. C. A. 6th), 4 F. (2d) 99; *O'Brien* v. *United States* (C. C. A. 7th), 51 F. (2d) 674, 679, 680; *Butts* v. *United States* (C. C. A. 8th), 273 Fed. 35, 38; *Woo Wai* v. *United States* (C. C. A. 9th), 223 Fed. 412. And the Circuit Court of Appeals of the Fourth Circuit, in the instant case, was able to reach its conclusion only by declining to follow the rule which it had laid down in its earlier decision in *Newman* v. *United States,* 299 Fed. 128, 131.[4] It

---

[3] Compare *Olmstead* v. *United States,* 277 U. S. 438.

[4] See, also, *United States* v. *Adams,* 59 Fed. 674; *Sam Yick* v. *United States,* 240 Fed. 60, 65; *United States* v. *Echols,* 253 Fed. 862; *Peterson* v. *United States,* 255 Fed. 433; *Billingsley* v. *United States,* 274 Fed. 86, 89; *Luterman* v. *United States,* 281 Fed. 374, 377; *United States* v. *Pappagoda,* 288 Fed. 214; *Ritter* v. *United States,* 293 Fed. 187; *Di Salvo* v. *United States,* 2 F. (2d) 222; *Silk* v.

should be added that in many cases in which the evidence has been found insufficient to support the defense of entrapment the availability of that defense, on a showing of such facts as are present here, has been recognized.[5] The federal courts have generally approved the statement of Circuit Judge Sanborn in the leading case of *Butts* v. *United States, supra,* as follows: " The first duties of the officers of the law are to prevent, not to punish crime. It is not their duty to incite to and create crime for the sole purpose of prosecuting and punishing it. Here the evidence strongly tends to prove, if it does not conclusively do so, that their first and chief endeavor was to cause, to create, crime in order to punish it, and it is unconscionable, contrary to public policy, and to the established law of the land to punish a man for the commission of an offense of the like of which he had never been guilty, either in thought or in deed, and evidently never would have been guilty of if the officers of the law had not inspired, incited, persuaded, and lured him to attempt to com-

*United States,* 16 F. (2d) 568; *Jarl* v. *United States,* 19 F. (2d) 891; *Corcoran* v. *United States,* 19 F. (2d) 901; *United States* v. *Washington,* 20 F. (2d) 160; *Cline* v. *United States,* 20 F. (2d) 494; *United States ex rel. Hassel* v. *Mathues,* 22 F. (2d) 979; *Driskill* v. *United States,* 24 F. (2d) 525; *Ybor* v. *United States,* 31 F. (2d) 42; *Robinson* v. *United States,* 32 F. (2d) 505; *Vaccaro* v. *Collier,* 38 F. (2d) 862; *Patton* v. *United States,* 42 F. (2d) 68; and cases collected in note in *O'Brien* v. *United States,* 51 F. (2d) 674, 678, including decisions of state courts. Compare *Rex* v. *Titley,* 14 Cox C. C. 502; *Blaikie* v. *Linton,* 18 Scottish Law Rep. 583; London Law Times, July 30, 1881, p. 223; *People* v. *Mills,* 178 N. Y. 274; 70 N. E. 786; *State* v. *Smith,* 152 N. C. 798; 67 S. E. 508; *Bauer* v. *Commonwealth,* 135 Va. 463; 115 S. E. 514; *State* v. *Gibbs,* 109 Minn. 247; 123 N. W. 810; *State* v. *Rippey,* 127 S. C. 550; 122 S. E. 397. See, also, 18 A. L. R. Ann. 146; 28 Col. L. Rev. 1067; 44 Harv. L. Rev. 109; 2 So. Cal. L. Rev. 283; 41 Yale L. J. 1249; 10 Va. L. Rev. 316; 9 Tex. L. Rev. 276.

[5] See cases cited in note 4.

mit it." The judgment in that case was reversed because of the ' fatal error ' of the trial court in refusing to instruct the jury to that effect. In *Newman* v. *United States, supra,* the applicable principle was thus stated by Circuit Judge Woods: " It is well settled that decoys may be used to entrap criminals, and to present opportunity to one intending or willing to commit crime. But decoys are not permissible to ensnare the innocent and law-abiding into the commission of crime. When the criminal design originates, not with the accused, but is conceived in the mind of the government officers, and the accused is by persuasion, deceitful representation, or inducement lured into the commission of a criminal act, the government is estopped by sound public policy from prosecution therefor." These quotations sufficiently indicate the grounds of the decisions above cited.

The validity of the principle as thus stated and applied is challenged both upon theoretical and practical grounds. The argument, from the standpoint of principle, is that the court is called upon to try the accused for a particular offense which is defined by statute and that, if the evidence shows that this offense has knowingly been committed, it matters not that its commission was induced by officers of the Government in the manner and circumstances assumed. It is said that where one intentionally does an act in circumstances known to him, and the particular conduct is forbidden by the law in those circumstances, he intentionally breaks the law in the only sense in which the law considers intent. *Ellis* v. *United States,* 206 U. S. 246, 257. Moreover, that as the statute is designed to redress a public wrong, and not a private injury, there is no ground for holding the Government estopped by the conduct of its officers from prosecuting the offender. To the suggestion of public policy the objectors answer that the legislature, acting within its constitutional au-

thority, is the arbiter of public policy[6] and that, where conduct is expressly forbidden and penalized by a valid statute, the courts are not at liberty to disregard the law and to bar a prosecution for its violation because they are of the opinion that the crime has been instigated by government officials.

It is manifest that these arguments rest entirely upon the letter of the statute. They take no account of the fact that its application in the circumstances under consideration is foreign to its purpose; that such an application is so shocking to the sense of justice that it has been urged that it is the duty of the court to stop the prosecution in the interest of the Government itself, to protect it from the illegal conduct of its officers and to preserve the purity of its courts. *Casey* v. *United States, supra.* But can an application of the statute having such an effect—creating a situation so contrary to the purpose of the law and so inconsistent with its proper enforcement as to invoke such a challenge—fairly be deemed to be within its intendment?

Literal interpretation of statutes at the expense of the reason of the law and producing absurd consequences or flagrant injustice has frequently been condemned. In *United States* v. *Palmer*, 3 Wheat. 610, 631, Chief Justice Marshall, in construing the Act of Congress of April 30, 1790, § 8 (1 Stat. 113) relating to robbery on the high seas, found that the words "any person or persons" were "broad enough to comprehend every human being," but he concluded that "general words must not only be limited to cases within the jurisdiction of the state, but also to those objects to which the legislature intended to apply them." In *United States* v. *Kirby*, 7 Wall. 482, the case arose under the Act of Congress of March 3, 1825

[6] See *Chicago B. & Q. R. Co.* v. *McGuire*, 219 U. S. 549, 565; *Green* v. *Frazier*, 253 U. S. 233, 240.

(4 Stat. 104) providing for the conviction of any person who "shall knowingly and willfully obstruct or retard the passage of the mail, or of any driver or carrier . . . carrying the same." Considering the purpose of the statute, the Court held that it had no application to the obstruction or retarding of the passage of the mail or of its carrier by reason of the arrest of the carrier upon a warrant issued by a state court. The Court said: "All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the legislature intended exceptions to its language which would avoid results of this character. The reason of the law in such cases should prevail over its letter." And the Court supported this conclusion by reference to the classical illustrations found in Puffendorf and Plowden. *Id.,* pp. 486, 487.

Applying this principle in *Lau Ow Bew* v. *United States,* 144 U. S. 47, the Court decided that a statute requiring the permission of the Chinese government, and identification by certificate, of " every Chinese person other than a laborer," entitled by treaty or the act of Congress to come within the United States, did not apply to Chinese merchants already domiciled in the United States, who had left the country for temporary purposes, *animo revertendi,* and sought to reënter it on their return to their business and their homes. And in *United States* v. *Katz,* 271 U. S. 354, 362, construing § 10 of the National Prohibition Act so as to avoid an unreasonable application of its words, if taken literally, the Court again declared that " general terms descriptive of a class of persons made subject to a criminal statute may and should be limited where the literal application of the statute would lead to extreme or absurd results, and where the legislative pur-

pose gathered from the whole Act would be satisfied by a more limited interpretation." [7] See, to the same effect, *Heydenfeldt* v. *Daney Gold Mining Co.*, 93 U. S. 634, 638; *Carlisle* v. *United States*, 16 Wall. 147, 153; *Oates* v. *National Bank*, 100 U. S. 239; *Chew Heong* v. *United States*, 112 U. S. 536, 555; *Holy Trinity Church* v. *United States*, 143 U. S. 457, 459–462; *Hawaii* v. *Mankichi*, 190 U. S. 197, 212–214; *Jacobson* v. *Massachusetts*, 197 U. S. 11, 39; *United States* v. *Jin Fuey Moy*, 241 U. S. 394, 402; *Baender* v. *Barnett*, 255 U. S. 224, 226; *United States* v. *Chemical Foundation*, 272 U. S. 1, 18.

We think that this established principle of construction is applicable here. We are unable to conclude that it was the intention of the Congress in enacting this statute that its processes of detection and enforcement should be abused by the instigation by government officials of an act on the part of persons otherwise innocent in order to lure them to its commission and to punish them. We are not forced by the letter to do violence to the spirit and purpose of the statute. This, we think, has been the underlying and controlling thought in the suggestions in judicial opinions that the Government in such a case is estopped to prosecute or that the courts should bar the prosecution. If the requirements of the highest public policy in the maintenance of the integrity

---

[7] In *Hawaii* v. *Mankichi*, 190 U. S. 197, 214, the Court referred with approval to the following language of the Master of the Rolls (afterwards Lord Esher) in *Plumstead Board of Works* v. *Spackman*, L. R. 13 Q. B. D. 878, 887: "If there are no means of avoiding such an interpretation of the statute," (as will amount to a great hardship,) "a judge must come to the conclusion that the legislature by inadvertence has committed an act of legislative injustice; but to my mind a judge ought to struggle with all the intellect that he has, and with all the vigor of mind that he has, against such an interpretation of an act of Parliament; and, unless he is forced to come to a contrary conclusion, he ought to assume that it is impossible that the legislature could have so intended."

of administration would preclude the enforcement of the statute in such circumstances as are present here, the same considerations justify the conclusion that the case lies outside the purview of the Act and that its general words should not be construed to demand a proceeding at once inconsistent with that policy and abhorrent to the sense of justice. This view does not derogate from the authority of the court to deal appropriately with abuses of its process and it obviates the objection to the exercise by the court of a dispensing power in forbidding the prosecution of one who is charged with conduct assumed to fall within the statute.

We are unable to approve the view that the court, although treating the statute as applicable despite the entrapment, and the defendant as guilty, has authority to grant immunity, or to adopt a procedure to that end. It is the function of the court to construe the statute, not to defeat it as construed. Clemency is the function of the Executive. *Ex parte United States*, 242 U. S. 27, 42. In that case, this Court decisively denied such authority to free guilty defendants, in holding that the court had no power to suspend sentences indefinitely. The Court, speaking by Chief Justice White, said—" if it be that the plain legislative command fixing a specific punishment for crime is subject to be permanently set aside by an implied judicial power upon considerations extraneous to the legality of the conviction, it would seem necessarily to follow that there could be likewise implied a discretionary authority to permanently refuse to try a criminal charge because of the conclusion that a particular act made criminal by law ought not to be treated as criminal. And thus it would come to pass that the possession by the judicial department of power to permanently refuse to enforce a law would result in the destruction of the conceded powers of the other departments and hence leave no law to be enforced." And while recognizing the hu-

mane considerations which had led judges to adopt the practice of suspending sentences indefinitely in certain cases, the Court found no ground for approving the practice " since its exercise in the very nature of things amounts to a refusal by the judicial power to perform a duty resting upon it and, as a consequence thereof, to an interference with both the legislative and executive authority as fixed by the Constitution." *Id.* pp. 51, 52. Where defendant has been duly indicted for an offense found to be within the statute, and the proper authorities seek to proceed with the prosecution, the court cannot refuse to try the case in the constitutional method because it desires to let the defendant go free.

Suggested analogies from procedure in civil cases are not helpful. When courts of law refuse to sustain alleged causes of action which grow out of illegal schemes, the applicable law itself denies the right to recover. Where courts of equity refuse equitable relief because complainants come with unclean hands, they are administering the principles of equitable jurisprudence governing equitable rights. But in a criminal prosecution, the statute defining the offense is necessarily the law of the case.

To construe statutes so as to avoid absurd or glaringly unjust results, foreign to the legislative purpose, is, as we have seen, a traditional and appropriate function of the courts. Judicial nullification of statutes, admittedly valid and applicable, has, happily, no place in our system. The Congress by legislation can always, if it desires, alter the effect of judicial construction of statutes. We conceive it to be our duty to construe the statute here in question reasonably, and we hold that it is beyond our prerogative to give the statute an unreasonable construction, confessedly contrary to public policy, and then to decline to enforce it.

The conclusion we have reached upon these grounds carries its own limitation. We are dealing with a statu-

tory prohibition and we are simply concerned to ascertain whether in the light of a plain public policy and of the proper administration of justice, conduct induced as stated should be deemed to be within that prohibition. We have no occasion to consider hypothetical cases of crimes so heinous or revolting that the applicable law would admit of no exceptions. No such situation is presented here. The question in each case must be determined by the scope of the law considered in the light of what may fairly be deemed to be its object.

Objections to the defense of entrapment are also urged upon practical grounds. But considerations of mere convenience must yield to the essential demands of justice. The argument is pressed that if the defense is available it will lead to the introduction of issues of a collateral character relating to the activities of the officials of the Government and to the conduct and purposes of the defendant previous to the alleged offense. For the defense of entrapment is not simply that the particular act was committed at the instance of government officials. That is often the case where the proper action of these officials leads to the revelation of criminal enterprises. *Grimm* v. *United States, supra.* The predisposition and criminal design of the defendant are relevant. But the issues raised and the evidence adduced must be pertinent to the controlling question whether the defendant is a person otherwise innocent whom the Government is seeking to punish for an alleged offense which is the product of the creative activity of its own officials. If that is the fact, common justice requires that the accused be permitted to prove it. The Government in such a case is in no position to object to evidence of the activities of its representatives in relation to the accused, and if the defendant seeks acquittal by reason of entrapment he cannot complain of an appropriate and searching inquiry into his own conduct and predisposition as bearing upon that issue. If in con-

sequence he suffers a disadvantage, he has brought it upon himself by reason of the nature of the defense.

What has been said indicates the answer to the contention of the Government that the defense of entrapment must be pleaded in bar to further proceedings under the indictment and cannot be raised under the plea of not guilty. This contention presupposes that the defense is available to the accused and relates only to the manner in which it shall be presented. The Government considers the defense as analogous to a plea of pardon or of *autrefois convict* or *autrefois acquit*. It is assumed that the accused is not denying his guilt but is setting up special facts in bar upon which he relies regardless of his guilt or innocence of the crime charged. This, as we have seen, is a misconception. The defense is available, not in the view that the accused though guilty may go free, but that the Government cannot be permitted to contend that he is guilty of a crime where the government officials are the instigators of his conduct. The federal courts in sustaining the defense in such circumstances have proceeded in the view that the defendant is not guilty. The practice of requiring a plea in bar has not obtained. Fundamentally, the question is whether the defense, if the facts bear it out, takes the case out of the purview of the statute because it cannot be supposed that the Congress intended that the letter of its enactment should be used to support such a gross perversion of its purpose.

We are of the opinion that upon the evidence produced in the instant case the defense of entrapment was available and that the trial court was in error in holding that as a matter of law there was no entrapment and in refusing to submit the issue to the jury.

The judgment is reversed and the cause is remanded for further proceedings in conformity with this opinion.

*Judgment reversed.*

MR. JUSTICE MCREYNOLDS is of the opinion that the judgment below should be affirmed.

Separate opinion of MR. JUSTICE ROBERTS.

The facts set forth in the court's opinion establish that a prohibition enforcement officer instigated the commission of the crime charged. The courts below held that the showing was insufficient, as matter of law, to sustain the claim of entrapment, and that the jury were properly instructed to ignore that defense in their consideration of the case. A conviction resulted. The Government maintains that the issue of entrapment is not triable under the plea of not guilty, but should be raised by plea in bar or be adjudicated in some manner by the court rather than by the jury, and as the trial court properly decided the question, the record presents no reversible error. I think, however, the judgment should be reversed, but for reasons and upon grounds other than those stated in the opinion of the court.

Of late the term " entrapment " has been adopted by the courts to signify instigation of crime by officers of government. The cases in which such incitement has been recognized as a defense have grown to an amazing total.[1] The increasing frequency of the assertion that the defendant was entrapped is doubtless due to the creation by statute of many new crimes, (e. g., sale and transportation of liquor and narcotics) and the correlative establishment of special enforcement bodies for the detection and punishment of offenders. The efforts of members of these forces to obtain arrests and convictions have too often been marked by reprehensible methods.

Society is at war with the criminal classes, and courts have uniformly held that in waging this warfare the forces of prevention and detection may use traps, decoys, and

[1] See O'Brien v. United States, 51 F. (2d) 674, footnote 1, p. 678.

454

deception to obtain evidence of the commission of crime. Resort to such means does not render an indictment thereafter found a nullity nor call for the exclusion of evidence so procured.[2] But the defense here asserted involves more than obtaining evidence by artifice or deception. Entrapment is the conception and planning of an offense by an officer, and his procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion, or fraud of the officer. Federal and state courts have held that substantial proof of entrapment as thus defined calls for the submission of the issue to the jury and warrants an acquittal. The reasons assigned in support of this procedure have not been uniform. Thus it has been held that the acts of its officers estop the government to prove the offense. The result has also been justified by the mere statement of the rule that where entrapment is proved the defendant is not guilty of the crime charged. Often the defense has been permitted upon grounds of public policy, which the courts formulate by saying they will not permit their process to be used in aid of a scheme for the actual creation of a crime by those whose duty is to deter its commission.

This court has adverted to the doctrine;[3] but has not heretofore had occasion to determine its validity, the basis on which it should rest, or the procedure to be followed when it is involved. The present case affords the opportunity to settle these matters as respects the administration of the federal criminal law.

There is common agreement that where a law officer envisages a crime, plans it, and activates its commission by one not theretofore intending its perpetration, for the sole purpose of obtaining a victim through indictment, conviction and sentence, the consummation of so revolting a plan

---

[2] Compare *Olmstead* v. *United States*, 277 U. S. 438.

[3] *Casey* v. *United States*, 276 U. S. 413.

ought not to be permitted by any self-respecting tribunal. Equally true is this whether the offense is one at common law or merely a creature of statute. Public policy forbids such sacrifice of decency. The enforcement of this policy calls upon the court, in every instance where alleged entrapment of a defendant is brought to its notice, to ascertain the facts, to appraise their effect upon the administration of justice, and to make such order with respect to the further prosecution of the cause as the circumstances require.

This view calls for no distinction between crimes *mala in se* and statutory offenses of lesser gravity; requires no statutory construction, and attributes no merit to a guilty defendant; but frankly recognizes the true foundation of the doctrine in the public policy which protects the purity of government and its processes. Always the courts refuse their aid in civil cases to the perpetration and consummation of an illegal scheme. Invariably they hold a civil action must be abated if its basis is violation of the decencies of life, disregard of the rules, statutory or common law, which formulate the ethics of men's relations to each other. Neither courts of equity nor those administering legal remedies tolerate the use of their process to consummate a wrong.[4] The doctrine of entrapment in criminal law is the analogue of the same rule applied in civil proceedings. And this is the real basis of the decisions approving the defense of entrapment, though in statement the rule is cloaked under a declaration that the government is estopped or the defendant has not been proved guilty.

A new method of rationalizing the defense is now asserted. This is to construe the act creating the offense by

[4] See *Hannay* v. *Eve*, 3 Cranch 242, 247; *Bank of United States* v. *Owens*, 2 Pet. 527, 538; *Bartle* v. *Nutt*, 4 Pet. 184, 188; *Hanauer* v. *Doane*, 12 Wall. 342, 349; *Trist* v. *Child*, 21 Wall. 441, 448; *Hazelton* v. *Sheckells*, 202 U. S. 71; *Crocker* v. *United States*, 240 U. S. 74, 78.

reading in a condition or proviso that if the offender shall have been entrapped into crime the law shall not apply to him. So, it is said, the true intent of the legislature will be effectuated. This seems a strained and unwarranted construction of the statute; and amounts, in fact, to judicial amendment. It is not merely broad construction, but addition of an element not contained in the legislation. The constituents of the offense are enumerated by the statute. If we assume the defendant to have been a person of upright purposes, law abiding, and not prone to crime,—induced against his own will and better judgment to become the instrument of the criminal purpose of another,—his action, so induced, none the less falls within the letter of the law and renders him amenable to its penalties. Viewed in its true light entrapment is not a defense to him; his act, coupled with his intent to do the act, brings him within the definition of the law; he has no rights or equities by reason of his entrapment. It cannot truly be said that entrapment excuses him or contradicts the obvious fact of his commission of the offense. We cannot escape this conclusion by saying that where need arises the statute will be read as containing an implicit condition that it shall not apply in the case of entrapment. The effect of such construction is to add to the words of the statute a proviso which gives to the defendant a double defense under his plea of not guilty, namely, (a) that what he did does not fall within the definition of the statute, and (b) entrapment. This amounts to saying that one who with full intent commits the act defined by law as an offense is nevertheless by virtue of the unspoken and implied mandate of the statute to be adjudged not guilty by reason of someone's else improper conduct. It is merely to adopt a form of words to justify action which ought to be based on the inherent right of the court not to be made the instrument of wrong.

It is said that this case warrants such a construction of the applicable act, but that the question whether a similar

construction will be required in the case of other or more serious crimes is not before the court. Thus no guide or rule is announced as to when a statute shall be read as excluding a case of entrapment; and no principle of statutory construction is suggested which would enable us to say that it is excluded by some statutes and not by others.

The doctrine rests, rather, on a fundamental rule of public policy. The protection of its own functions and the preservation of the purity of its own temple belongs only to the court. It is the province of the court and of the court alone to protect itself and the government from such prostitution of the criminal law. The violation of the principles of justice by the entrapment of the unwary into crime should be dealt with by the court no matter by whom or at what stage of the proceedings the facts are brought to its attention.[5] Quite properly it may discharge the prisoner upon a writ of *habeas corpus*.[6] Equally well may it quash the indictment or entertain and try a plea in bar.[7] But its powers do not end there. Proof of entrapment, at any stage of the case, requires the court to stop the prosecution, direct that the indictment be quashed, and the defendant set at liberty.[8] If in doubt as to the facts it may submit the issue of entrapment to a jury for advice. But whatever may be the finding upon such submission the power and the duty to act remain with the court and not with the jury.

---

[5] Compare *Gambino* v. *United States*, 275 U. S. 310, 319.

[6] See *United States ex rel. Hassell* v. *Mathues*, 22 F. (2d) 979.

[7] Compare *United States* v. *Pappagoda*, 288 Fed. 214; *Spring Drug Co.* v. *United States*, 12 F. (2d) 852.

[8] In *United States* v. *Echols*, 253 Fed. 862, upon the tender of a plea of guilty, the court of its own motion examined the prisoner and the officers concerned in his arrest; and being satisfied that these officers had instigated the crime, declared that public policy required that the plea be refused and the case dismissed. In *United States* v. *Healy*, 202 Fed. 349, a judgment and sentence were set aside and the defendant discharged upon the court's ascertaining that the conviction was procured by entrapment.

Such action does not grant immunity to a guilty defendant. But to afford him as his right a defense founded not on the statute, but on the court's view of what the legislature is assumed to have meant, is to grant him unwarranted immunity. If the court may construe an act of Congress so as to create a defense for one whose guilt the act pronounces, no reason is apparent why the same statute may not be modified by a similar process of construction as to the penalty prescribed. But it is settled that this may not be done. *Ex parte United States*, 242 U. S. 27. The broad distinction between the refusal to lend the aid of the court's own processes to the consummation of a wrong and the attempt to modify by judicial legislation the mandate of the statute as to the punishment to be imposed after trial and conviction is so obvious as not to need discussion.

Recognition of the defense of entrapment as belonging to the defendant and as raising an issue for decision by the jury called to try him upon plea of the general issue, results in the trial of a false issue wholly outside the true rule which should be applied by the courts. It has been generally held, where the defendant has proved an entrapment, it is permissible for the government to show in rebuttal that the officer guilty of incitement of the crime had reasonable cause to believe the defendant was a person disposed to commit the offense. This procedure is approved by the opinion of the court. The proof received in rebuttal usually amounts to no more than that the defendant had a bad reputation, or that he had been previously convicted. Is the statute upon which the indictment is based to be further construed as removing the defense of entrapment from such a defendant?

Whatever may be the demerits of the defendant or his previous infractions of law these will not justify the instigation and creation of a new crime, as a means to reach him and punish him for his past misdemeanors. He has committed the crime in question, but, by supposition,

only because of instigation and inducement by a government officer. To say that such conduct by an official of government is condoned and rendered innocuous by the fact that the defendant had a bad reputation or had previously transgressed is wholly to disregard the reason for refusing the processes of the court to consummate an abhorrent transaction. It is to discard the basis of the doctrine and in effect to weigh the equities as between the government and the defendant when there are in truth no equities belonging to the latter, and when the rule of action cannot rest on any estimate of the good which may come of the conviction of the offender by foul means. The accepted procedure, in effect, pivots conviction in such cases, not on the commission of the crime charged, but on the prior reputation or some former act or acts of the defendant not mentioned in the indictment.

The applicable principle is that courts must be closed to the trial of a crime instigated by the government's own agents. No other issue, no comparison of equities as between the guilty official and the guilty defendant, has any place in the enforcement of this overruling principle of public policy.

The judgment should be reversed and the cause remanded to the District Court with instructions to quash the indictment and discharge the defendant.

MR. JUSTICE BRANDEIS and MR. JUSTICE STONE concur in this opinion.