## SAVANNAH RIVER ELECTRIC CO. v. FEDERAL POWER·COMMISSION.

### No. 5606.

Circuit Court of Appeals, Fourth Circuit.

Nov. 10, 1947.

Harllee Branch, Jr., of Atlanta, Ga., (Dan MacDougald and R. S. Sams, both of Atlanta, Ga., Julian J. Willingham and Inman Curry, both of Augusta, Ga., and MacDougald, Troutman, Sams & Branch, of Atlanta, Ga., on the brief), for petitioner.

Willard W. Gatchell, Principal Atty., Federal Power Commission, of Washington, D. C. (Bradford Ross, Gen. Counsel, and John C. Mason, Atty., Federal Power Commission, both of Washington, D. C., on the brief), for respondent.

David W. Robinson, of Washington, D. C. (Edgar A. Brown, of Barnwell, S. C., on the brief), for Clark's Hill Authority of South Carolina, intervenor.

Before PARKER, SOPER and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is a petition by the Savannah River Electric Company to review a decision of the Federal Power Commission which dismissed an application by the company for a license to construct a dam and hydro-electric power project at Clark Hill on the Savannah River in South Carolina and Georgia. The company filed application on August 28, 1946, for a license to construct the Clark Hill project. The commission heard evidence and found the facts, most if not all of which were matters of public record of which the court will take judicial notice, and on January 14, 1947, entered an order dismissing the application. A petition for rehearing was thereupon filed by the company again asking that it be granted a license, and this was denied on February 11th. On its petition before us the company contends that upon its application for license the commission should have made findings as to whether it was in the public interest for the project to be constructed by the company, instead of by the government, and should have made a report of such findings to Congress instead of dismissing the petition. We think that the petition is entirely without merit.

The facts are that in the year 1928 the company applied for and secured from the commission a license to construct this project. Construction was never commenced by the company, however, and in 1932, with the approval of the commission, the license was surrendered. In 1939 the commission directed a letter to the President of the United States indorsing the project and recommending its early construction by the United States; and in 1944 it directed a letter to the Chief of Engineers, United States Army, in which it expressed agreement with the report of a board of engineers that the project constituted a desirable initial step in the development of the Savannah River. This last letter was before Congress at the time of the passage of the Flood Control Act of 1944, as a part of House Document No. 657, 78th Congress, 2nd Session.

The Flood Control Act of 1944, 58 Stat. 887, authorized the construction of the

Clark Hill project by the United States as the commission had recommended. That act adopted a number of projects for construction under the general provisions of the act, among others the Clark Hill project, the language with respect to which was as follows (58 Stat. at p. 894): "Savannah River Basin. The general plan for the comprehensive development of the Savannah River Basin for flood control and other purposes recommended by the Chief of Engineers in House Document Numbered 657, Seventy-eighth Congress, second session, is approved and the construction of the Clark Hill Reservoir on the Savannah River in South Carolina and Georgia, is hereby authorized substantially in accordance with the recommendations of the Chief of Engineers in that report at an estimated cost of $35,300,000."

Following the passage of the Flood Control Act of 1944, Congress passed the Deficiency Appropriations Bill of 1946, 59 Stat. 632, under which a lump sum appropriation included $1,000,000, which had been budgeted to Clark Hill; and the War Department Civil Appropriations Act approved May 2, 1946, 60 Stat. 160, under which another lump sum appropriation included $4,500,000 budgeted to this purpose. This $5,500,000 was allocated to the project by the Chief of Engineers of the Army and $1,021,000 had been expended and $991,000 committed on outstanding contracts at the time of the commission's hearing in October 1946. At that time the engineering design and the plans and specifications had been completed, arrangement had been made to advertise in November, December, and January, for construction bids on important phases of the project, and construction had been begun on the access railway and was 42% completed.

Since the hearing before the commission the order of the President freezing funds allocated to construction projects, so as to make the funds unavailable, has been modified to permit the army engineers to make additional contracts on this project up to the original allocation of $5,500,-000 by the Chief of Engineers, proceedings have been commenced to condemn lands for the project and Congress has appropri-ated additional funds for flood control, $5,000,000 of which has been allocated under the budget to Clark Hill. While these matters occurred after the hearing before the commission, all are matters of public record of which we can take judicial notice, except the condemnation suits, which are admitted in briefs of counsel. They are proper subjects for our consideration in passing upon the company's petition; for they show indubitably that Congress is actively supporting the project and is continuing to appropriate funds for its construction notwithstanding the rise in construction costs, upon which plaintiff chiefly relies for the position it takes.

One circumstance in connection with the last appropriation by Congress deserves special comment. The lump sum appropriation of the bill as introduced in the House was based upon an allocation of only $1,481,000 to the Clark Hill project. During the debate in the House, an amendment was offered to reduce the appropriation by the amount of the allocation and argument was made specifically against the Clark Hill project in support of the amendment. The amendment was rejected, however, and the Senate amended the bill so as to justify the allocation of $5,000,000 to the project, and this was agreed to by the House. In the course of a hearing before a subcommittee of the Senate Committee on Appropriations, the Assistant Chief of Engineers for Civil Work gave testimony in support of the project showing that the access railway had been completed, that the west embankment had been practically completed and construction started on the east embankment, the division channel, the coffer dam, the sluice gates and liners and that contracts had been let for other construction.

The commission adverted to the fact that the President of the United States had placed a ceiling on the amount that the Secretary of War might spend on flood control projects during the years 1947 and 1948 but found that there was nothing to indicate that the Clark Hill project would not be constructed as authorized, saying: "There is no evidence in the record to indicate that the Clark Hill project will not

be constructed by the United States as authorized, but instead the evidence indicates that the project will go forward under the usual procedure of appropriating funds from year to year as required by the Chief of Engineers, United States Army, for completing the project." And in holding that the application should be dismissed without further recommendation to Congress, the Commission said: "The commission's recommendations that the Clark Hill project be undertaken by the United States having already been before Congress, no further recommendations need be made to Congress pursuant to section 7(b) of the Federal Power Act, and since the project has been authorized by Congress for construction and work has been started, the pending application should be dismissed."

█ Under the facts as stated, there is grave doubt whether there was jurisdiction in the commission to entertain an application for a private license or make recommendations to Congress as to the development of the project. It is true that section 4(e) of the act authorizes the commission to issue licenses for the construction of hydro-electric power projects in streams or other bodies of water over which Congress has jurisdiction, and section 7(b) provides that it shall not approve an application for license where, in its judgment, the development should be undertaken by the United States itself but shall submit its findings and recommendations to Congress. These provisions of the statute, however, are to be given a reasonable construction; and it could hardly have been intended that under them the commission should have jurisdiction, in the case of projects which Congress had expressly taken over for the United States and upon which work was going forward under appropriations made by Congress, to entertain applications for license from a private corporation or to make reports to Congress as to the relative merits of private and public construction. It is not reasonable to assume that Congress intended that, in such a case, the commission should interfere with the public project by granting a license to a private company to construct the same project or that the commission should make recommendations to Congress with respect to a matter that Congress had already decided. See United States v. Kirby, 7 Wall. 482, 19 L.Ed. 278; Holly Trinity Church v. United States, 143 U.S. 457, 459–462, 12 S.Ct. 511, 36 L.Ed. 226; Hawaii v. Mankichi, 190 U.S. 197, 212–214, 23 S.Ct. 787, 47 L.Ed. 1016; Jacobson v. Massachusetts, 197 U.S. 11, 39, 25 S.Ct. 358, 49 L.Ed. 643, 3 Ann.Cas. 765; Sorrells v. United States, 287 U.S. 435, 446–448, 53 S.Ct. 210, 77 L. Ed. 413, 86 A.L.R. 249. As said in the case first cited: "All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the legislature intended exceptions to its language, which would avoid results of this character. The reason of the law in such cases should prevail over the letter."

█ Assuming, without deciding, however, that the commission had jurisdiction to entertain the application for license and to make further recommendations to Congress, there can be no doubt that it was acting well within the limits of its discretion in granting no license in this case and in dismissing the petition without making any further recommendations to Congress with respect to the matter. The company had been granted a license and had surrendered it. The commission had recommended to the President and the Chief of Engineers that the United States construct the project; and Congress had accepted its recommendation and had acted upon it. Public money had been spent upon the project and the work was going forward. The commission would have stultified itself if, in this posture of affairs, it had granted a license to a private company to construct the project or, in denying the license, had offered unsolicited advice to Congress with respect to the merits of private as against public construction, or vice-versa. If Congress desired further advice from the commission as to the project which it had undertaken on the commission's recommendation, it knew how to get that advice; and it was manifestly not incumbent upon the commission to make fur-

ther recommendations merely because a private company had made application for a license.

The action of the commission in dismissing the petition will be affirmed.

Affirmed.