QUESTION: Would a police officer be engaging in criminal solicitation in violation of s. 777.04(2), F.S., if he requests a suspected dealer in controlled substances to sell him such substances?
SUMMARY: A police officer would not violate the criminal solicitation provisions of s. 777.04(2), F.S. (1974 Supp.), if, pursuant to a good faith undercover investigation into the activities of suspected dealers in controlled substances, he requests such a person to sell him such substances. As relevant to your inquiry, s. 777.04(2), F.S. (1974 Supp.), provides: Whoever solicits another to commit an offense prohibited by law and in the course of such solicitation commands, encourages, hires, or requests another person to engage in specific conduct which would constitute such offense or an attempt to commit such offense commits the offense of criminal solicitation and shall, when no express provision is made by law for the punishment of such solicitation, be punished as provided in subsection (4). I am of the opinion that the Legislature did not intend by its enactment of s. 777.04(2), supra, to curtail or in any way subject traditional, good faith undercover law enforcement activities to prosecution under the provisions thereof. In Sorrells v. United States, 287 U.S. 435 (1932), the Supreme Court of the United States recognized the need for undercover law enforcement activity in order to detect and prevent crime and to apprehend those engaged in crime: It is well settled that the fact that officers or employees of the Government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution. Artifice and strategem may be employed to catch those engaged in criminal enterprises. * * * The appropriate object of this permitted activity, frequently essential to the enforcement of the law, is to reveal the criminal design; to expose the illicit traffic, the prohibited publication, the fraudulent use of the mails, the illegal conspiracy, or other offenses, and thus to disclose the would-be violators of the law. . . . (Citations omitted.) [Sorrells, supra, pp. 441-442.] Indeed, in United States v. Russell, 411 U.S. 423 (1973), the court reaffirmed the principles of Sorrells, supra, and specifically recognized the need for undercover investigations into drug-related offenses: . . . Thus in drug-related offenses law enforcement personnel have turned to one of the only practicable means of detection: the infiltration of drug rings and a limited participation in their unlawful present practices. Such infiltration is a recognized and permissible means of investigation. . . . [Russell, supra, at p. 432.] Given the accepted validity of undercover investigative techniques, it would be foolish to conclude, through a hyperliteral interpretation of s. 777.04(2), F.S. (1974 Supp.), that police officers should be prosecuted for performing their jobs. Such a bizarre interpretation of a statute is generally avoided by the courts: To construe statutes so as to avoid absurd or glaringly unjust results, foreign to the legislative purpose, is, as we have seen, a traditional and appropriate function of the courts. . . . [Sorrells, supra, at p. 450.] Additionally, I note that the existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence. Smith v. California, 361 U.S. 147 (1959). This principle is noted in American Jurisprudence, Second Edition: At common law, a crime required two elements: an act and an evil intention. This view is expressed in the maxim that an act does not render one guilty unless the mind is guilty. Thus, one who actually participates in a criminal act may not be guilty if he did so only for the purpose of detecting and apprehending the offender. This principle that only conscious wrongdoing constitutes crime is deeply routed (sic) in our legal system and remains the rule, rather than the exception, even though there are some categories of modern statutory offenses to which it is not applied. . . . (Emphasis supplied.) [(See) 21 Am. Jur. s. 81, pp. 162-163.] Correlatively, in Wharton's Criminal Law, it is said: Section 271. Detectives not accessories. A detective entering apparently into a criminal conspiracy already formed for the purpose of exploding it is not an accessory before the fact. For it should be remembered that while detectives, when acting as decoys, may apparently provoke the crime, the essential element of dolus, or malicious determination to violate the law, is wanting in their case. And it is only the formal, and not the substantive, part of the crime that they provoke. They provoke, for instance, in larceny, the asportation of the goods, but not the ultimate loss by the owner. They may be actuated by the most unworthy of motives, but the animus furandi (emphasis by court) in larceny is not imputable to them; and it is in larcenous cases or cheats that they are chiefly employed. They may, however, become liable for negligence in their conduct, when it leads to injuries which prudence on their part might have avoided; as when they instigate an ambush which results in a homicide; or when the checks they look forward to as likely to explode a plot, whose execution they advise, are not properly applied. Nor should it be forgotten that if one who silently watches a crime until it ripens is an accessory, then the guilt of accessoryship falls on a parent who watches anxiously but silently a child's course until the period when interposition and warning would be likely to be successful, and on a specialist in science, who, suspecting that there may be some wrongful purpose in preparation in a neighboring laboratory, forbears to give notice of the danger until he sees that it assuredly exists. Eminently is this the case with persons who, from a sense of duty, or under the direction of the public authorities, watch even as apparent members the progress of conspiracies which could in no other way be exposed. (Emphasis supplied.) Of further authority on the point is the following principle relating specifically to the crime of solicitation: It is not solicitation or instigation of a crime for a person, having reason to believe that another is committing or intending to commit a crime, to furnish an opportunity for its commission, if the purpose is in good faith to secure evidence of guilt and not to induce an innocent person to commit a crime. [(See) 22 C.J.S. s. 78b, at p. 237.] Thus, and assuming that the police officers are performing good faith undercover investigations into the activities of suspected dealers in controlled substances, I am of the opinion that they would not have the type of mens rea required in order to constitute a violation of s. 777.04(2), F.S. (1974 Supp.). I cannot overstress the requirement that the officers involved be acting in good faith, for once they overstep the bounds of acceptable investigatory activity and move into firm areas of entrapment, they come perilously close to having the requisite criminal intent required for prosecution pursuant to Florida's new criminal solicitation statute. See Sorrells, supra; Russell, supra; and Smith v. State, . . . . .So.2d. . . . ., Case Nos. 74-1366, 74-1367, and 74-1368, Opinion Filed October 15, 1975, Second District Court of Appeal of Florida, not yet reported, especially Judge McNulty's dissent.