47 F.3d 1171
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Larry HARRIS, Defendant-Appellant.
 No. 94-1050.
 United States Court of Appeals, Sixth Circuit.
 Jan. 5, 1995.
 
 Before: JONES, NORRIS, and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 The defendant-appellant, Larry Harris, was convicted of three counts of distribution of heroin in violation of 21 U.S.C. Sec. 841(A)(1) and was sentenced to concurrent 24-month prison terms, followed by five years on supervised release. In this appeal, Harris claims that he was entrapped into committing the charged crimes, that the jury instructions given by the district court on entrapment were insufficient, and that the district Court erred in determining his sentence. We find no reversible error on appeal and affirm both the convictions and the concurrent sentences.
 
 
 2
 In July 1992, the United States Postal Inspection Service was investigating the distribution of crack cocaine by Donald Carden, a Postal Service employee. As part of the investigation, the postal inspectors paid Michael Robinson to pose as an individual intent on purchasing narcotics from Carden. When Robinson inquired about the possibility of purchasing heroin also, Carden responded by indicating that "you have to talk to Larry [Harris] about that." Harris, who worked with Carden in the vehicle maintenance department of the Post Office, then came to speak with Robinson and agreed with him to purchase heroin for him. Harris told Robinson to call first to make the necessary arrangements for the drug transactions. At that time, Harris gave Robinson his work number, informed Robinson that he purchased his heroin on East Warren, and invited Robinson to call him.
 
 
 3
 At the direction of Postal Inspector Jane Anderson, Robinson called Harris on July 16, 1992, and suggested a meeting time and place to facilitate the purchase of heroin. Inspector Anderson fitted Robinson with a hidden recording device and dropped him off near the corner where Robinson and Harris agreed to meet. Upon meeting, Robinson gave Harris $200 cash in exchange for seven packets of heroin. Similar transactions were also conducted by Robinson and Harris on July 22 and July 27, 1992. On those latter two occasions, however, Harris would not transfer the heroin to Robinson at the same time he received the monetary payment; instead, the actual delivery of the narcotics was delayed until later in the day or until the next day. Each encounter was taped by a recorder concealed by Robinson and also videotaped by inspectors in a nearby van. Although the buys were all initiated by a phone call from Robinson to Harris, Robinson testified at trial that the defendant never exhibited any hesitation or reluctance to consummate the drug deals.
 
 
 4
 Finally, on August 5, 1992, another drug buy was arranged between Robinson and Harris. Robinson, as usual, first called Harris to request heroin, then met him at the designated street corner and delivered $200 cash to him. On that occasion, Robinson also indicated that a friend of his would be picking up the heroin from the defendant. Harris did not return to the street corner at the arranged time the next day with the narcotics, however, possibly because, as Harris later claimed, he knew by that time that Robinson "was working for the Inspectors."
 
 
 5
 Harris was arrested in November 1992 and was eventually convicted by a jury on three counts of distributing heroin. At the sentencing hearing, the district judge concluded that Harris had perjured himself during his trial testimony and thus increased the defendant's base offense level two levels for obstruction of justice. The judge also concluded that Harris had accepted responsibility for his misdeeds, but, nonetheless, the judge declined to reduced Harris's sentence on that basis. Although Harris originally challenged the district court's ruling on these two sentencing issues, counsel for the government and for the defense now acknowledge that the district court's sentencing order is no longer at issue.
 
 
 6
 The proof adduced at the trial in this case does not establish that Harris was entrapped as a matter of law. In Jacobson v. United States, 112 S.Ct. 1535, 1540 (1992), the Supreme Court recognized:
 
 
 7
 [T]here can be no dispute that the Government may use undercover agents to enforce the law. "It is well settled that the fact that officers or employees of the Government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution. Artifice and stratagem may be employed to catch those engaged in criminal enterprises." Sorrells v. United States, 287 U.S. 435, 441, 53 S.Ct. 210, 212, 77 L.Ed. 413 (1932).
 
 
 8
 (Other citations omitted.) Thus, if the government merely offers the defendant an opportunity to engage in illegal activity and the defendant promptly avails himself or herself of that opportunity, entrapment is not established as a matter of law. Id., 112 S.Ct. at 1541. Nevertheless, "Government agents may not originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act, and then induce commission of the crime so that the Government may prosecute." Id., 112 S.Ct. at 1540. Instead, "the prosecution must prove beyond a reasonable doubt that the defendant was disposed to commit the criminal act prior to first being approached by Government agents." Id. (emphasis added). See also United States v. Silva, 846 U.S. 352, 355 (6th Cir.) cert. denied, 488 U.S. 941 (1988) ("Predisposition ... is, by definition, the defendant's state of mind before his initial exposure to governmental agents.").
 
 
 9
 In determining whether a defendant was in fact predisposed to commission of a crime prior to contact with government agents, this court has suggested certain factors for a court's or a jury's consideration. Included among those factors are the following:
 
 
 10
 [T]he character or reputation of the defendant, including any prior criminal record; whether the suggestion of the criminal activity was initially made be the Government; whether the defendant was engaged in the criminal activity for profit; whether the defendant evidenced reluctance to commit the offense, overcome only by repeated Government inducement or persuasion; and the nature of the inducement or persuasion supplied by the Government.
 
 
 11
 United States v. McLernon, 746 F.2d 1098, 1112 (6th Cir.1984).
 
 
 12
 An examination of the McLernon factors in the context of this prosecution leads to the conclusion that Harris was predisposed to criminal activity even prior to his contact with government agents. The evidence establishes that the government did provide Harris with the opportunity to commit the crimes with which he was charged but that the defendant himself had no reluctance about participating in the wrongdoing. First, Michael Robinson, the government's undercover informant, was immediately directed by Donald Carden to Harris as a known source of knowledge regarding the purchase of heroin in the community. Although Robinson did first approach Harris and inquire about the possibility of purchasing heroin, Harris did not hesitate at all in agreeing to participate in the transactions. Furthermore, the defendant actually gave Robinson his telephone number and encouraged him to call during work hours to arrange for the sales. Moreover, Harris obviously was already well aware of the availability of heroin in the area and admitted to investigators that he had previously facilitated sales of narcotics either for cash remuneration or for a portion of the drug quantity purchased. In short, the testimony and other evidence at trial established beyond a reasonable doubt that Harris's will was not overborne by the government action but, rather, that the postal inspectors merely provided an opportunity for an individual already predisposed to commit such crimes to engage in criminal wrongdoing.
 
 
 13
 Harris also argues briefly that the governmental activity in this case was so outrageous as to violate principles of due process. Again, however, the proof shows that the government did nothing more in this case than to afford Harris the opportunity to commit a drug trafficking offense. The defendant himself readily agreed to take advantage of that opportunity without any misconduct or "outrageous activity" on the part of the postal inspectors involved in the investigation.
 
 
 14
 Finally, we have examined the jury instruction on entrapment that was given in this case and conclude that it was not erroneous, a fact that is now conceded by the defendant. The gist of his argument on appeal is that the Sixth Circuit Pattern Jury Instruction 6.03 would have been "more fair" under the circumstances of this case. There is, simply, no ground for reversal on this basis.
 
 
 15
 Finding no merit to the issues raised in this appeal, we AFFIRM the judgment of the district court.