**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

<table>
<tr>
<td>

UNITED STATES OF AMERICA,
     *Plaintiff-Appellee*,


    v.


ALEX JOSEPH PEDRIN, JR., AKA
Alex Pedrin, Jr.,
    *Defendant-Appellant.*

</td>
<td>

No. 11-10623

D.C. No.
4:09-cr-02073-
CKJ-GEE-2


ORDER

</td>
</tr>
</table>

Filed November 23, 2015

Before: John T. Noonan, William A. Fletcher,
and Morgan Christen, Circuit Judges.

Order;
Statement by Judge Noonan

## SUMMARY[*]

### Criminal Law

The panel denied on behalf of the court a petition for rehearing en banc in a case in which the panel, affirming a conviction and sentence for conspiracy to possess with intent to distribute cocaine, held that the defendant's prosecution did not result from outrageous government conduct.

Judge Noonan wrote separately to recommend granting the petition for rehearing en banc. He wrote that because the government employed psychological pressure in luring the defendant into planning to commit the crime and the government could not prove the defendant's disposition to commit such a crime beyond a reasonable doubt, the petition for rehearing en banc should be granted to consider whether the defendant was entrapped.

### ORDER

The panel has voted to deny the petition for rehearing en banc. Judges W. Fletcher and Christen have voted to deny the petition for rehearing en banc. Judge Noonan recommends that the petition be granted.

The full court has been advised of the petition for rehearing en banc and no judge of the court has requested a

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for rehearing en banc, filed October 15, 2015, is **DENIED**.

---

NOONAN, Circuit Judge, writing separately to recommend granting the petition for rehearing en banc:

Pedrin argues in his petition for rehearing en banc that the government entrapped him; as set forth in my dissent, *United States v. Pedrin*, 797 F.3d 792, 797–800 (9th Cir. 2015), I agree. Additional factors further support Pedrin's claim and I bring them to the forefront here.

The government is guilty of entrapment when it lures a person into committing a crime that he was not predisposed to commit. *Sorrells v. United States*, 287 U.S. 435, 445 (1932). The United States Supreme Court has recognized that when officers of the law engage in this conduct it is "unconscionable, contrary to public policy, and to the established law of the land . . . ." *Id*. at 444–45 (1932).

Pedrin asserts that the government lured him into a plan to rob a fictitious stash house by dangling before him a scheme that was "rich in pay off," and involved little work or risk. He further asserts that the government could not establish beyond a reasonable doubt that he was predisposed to participate in the scheme because at the time the government approached him, it had no evidence supporting such a predisposition. *Jacobson v. United States*, 503 U.S. 540, 549 (1992) (holding that the government must prove

predisposition beyond a reasonable doubt prior to the government's having approached defendant).

When the government puts psychological pressure on persons to commit a crime this pressure militates towards a finding of entrapment. In *Sorrells*, for example, the Court focused on the fact that the government agent was, like Sorrells, a war veteran who relied on this status in order to pressure Sorrells into getting him liquor. 287 U.S. 435, 440–41 (1932). In *Sherman v. United States*, the Court emphasized the psychological pressure the government put on Sherman by relying on an informant who was, like Sherman, a recovering drug addict and who "resort[ed] to sympathy" to persuade Sherman to buy drugs. 356 U.S. 369, 373 (1958). In *Jacobson*, the Court focused on the psychological pressure the government put on Jacobson by repeatedly sending him mailings tempting him to purchase the illegal materials. 503 U.S. at 550.

Here, the government similarly relied on psychological tricks to persuade Pedrin to participate in the crime. First, the confidential informant was co-defendant Omar Perez's uncle, and therefore someone to whom Perez and Pedrin, a close friend of Perez's, were more likely to succumb than they otherwise might. Second, the informant-uncle peer pressured Pedrin and Perez by telling them that the government agent was "very cool people," that he, the informant, "want[ed] to do the job," and that if they could not do it, he would find people who could. Third, the government put time pressure on defendants by telling them the opportunity was available to them for only a limited period. Finally, the government agent eliminated some of the moral qualms defendants may have had about the drug dealers they were planning to rob by telling them that he had "no love" for the dealers and that

they were cheating him out of his fair share of the profits from their business. These psychological tactics no less induced defendants to participate in the reverse sting than did the tactics employed by the government in *Sorrells*, *Sherman*, or *Jacobson*.

Regarding Pedrin's predisposition to participate in the scheme, not only did the government know nothing about him when they approached him, nothing in his record suggests that he was apt to commit a crime like this one. Pedrin was in and out of the juvenile system, and as an adult served time in jail for several misdemeanors. Pedrin had two felony convictions, one for being "belligerent to officers while being booked into jail," and another for the crime of endangerment for which he served a prison sentence of a little over one year.

Pedrin's record contains no crimes related to dealing cocaine, robberies, or home invasions. The only evidence supporting that Pedrin previously committed a stash house robbery is the testimony of co-defendant Terry Bombard who was more than ten years older than twenty-four-year-old Pedrin and who testified against him in exchange for a deal of ten years instead of a life sentence. The government offered no evidence independently corroborating Bombard's testimony. On these facts, Bombard's assertions that Pedrin previously committed stash house robberies would likely not be proven beyond a reasonable doubt.

Because the government employed psychological pressure in luring Pedrin into planning to commit the crime, and because the government could not prove his disposition to commit such a crime beyond a reasonable doubt, I recommend granting the petition for rehearing en banc to consider whether Pedrin was entrapped.