**UNITED STATES of America**

v.

**James SANTORE, Appellant,**
**Peter Casella.**

**No. 12850.**

United States Court of Appeals
Third Circuit.

Argued Sept. 24, 1959.

Decided Oct. 12, 1959.

Claude O. Lanciano, Philadelphia, Pa., for appellant.

Chester A. Weidenburner, U. S. Atty., Newark, N. J., for appellee.

Before GOODRICH, STALEY and HASTIE, Circuit Judges.

STALEY, Circuit Judge.

Appellant, James Santore, presents two questions relative to the defense of entrapment in this appeal: (1) whether the evidence in the instant case was susceptible of only one conclusion and, therefore, a matter of law to be determined by the district judge, and (2) whether the trial court erred in submitting the issue of entrapment to the jury even though the evidence was such as would normally present a jury question.

Santore was indicted and convicted on a four-count indictment charging unlawful sale of heroin and opium which had been unlawfully brought into the United States;[1] unlawful receipt, concealment and purchase of heroin and opium;[2] unlawful sale of narcotics which were not in or from the original stamped package;[3] and unlawful sale of narcotics not "in pursuance of a written order * * * on a form * * * issued in blank for that purpose by the Secretary" of the Treasury.[4]

Appellant does not dispute the sufficiency of the evidence to justify the conviction for the offenses charged in the indictment, but rather relies principally on alleged errors relative to the treatment accorded his defense of entrapment.

1.  21 U.S.C.A. § 174.
2.  21 U.S.C.A. § 174.
3.  26 U.S.C. § 4704(a).
4.  26 U.S.C. § 4705(a).

Evidence on this issue was given by two government narcotics agents and the appellant himself. The testimony of the government agents may be summarized as follows: Acting upon information supplied by the Federal Bureau of Narcotics in New York that Santore was engaged in the narcotics traffic, they sought out the appellant. The information supplied to the agents indicated that Santore was believed to operate at a luncheonette in Philadelphia, and on February 26, 1957, agent Picini telephoned the luncheonette and asked for appellant. Although Picini did not speak with Santore on the phone, the unidentified party who answered apparently relayed the message to him and arranged a meeting for the same evening. Upon arrival at the luncheonette, Picini was taken to a political club where he met Santore. Picini indicated that a man named "Tee" from Baltimore had referred him to Santore. Santore asked whether Picini knew anyone about town and specifically inquired concerning Harry Riccobene, Marco Reginelli and others. Picini replied that although he had heard of them, he did not know any of the individuals. He then informed Santore that he was interested in purchasing heroin and that Tee had advised him that the appellant "could take care" of it. Santore replied that Riccobene was the connection for purchasing narcotics in Philadelphia and although he was then in jail his associates were still doing business. Furthermore, Santore advised Picini that he could obtain heroin for him for $3,500 per quarter kilo. The agent testified that this conversation took place within the "first few minutes" or within the first half hour of their first meeting. Subsequent to the first meeting Picini met Frank Valle through the appellant in the basement of Valle's home, and on March 20, 1957, the second government agent, Marshall, met Santore. At this meeting the sum of $200 was given to appellant because he "needed a loan" and Santore informed the agent that he "could take it off the purchase price" of the quarter kilo of heroin that the agent ordered at or about that time. Three days thereafter the heroin was delivered to the agents, and a subsequent sale was consummated on April 3, 1957. In both cases the money was paid directly to Santore and he delivered the narcotics. Subsequent transactions occurred, but at no time preceding his arrest did he ever protest against any participation in the narcotics traffic.

Appellant, on the other hand, testified that he first met agents Picini and Marshall in the latter part of January, 1957, in a luncheonette in Philadelphia. They asked for James Santore, introduced themselves as Mike Felani and John Myers, indicated that they were from Baltimore and had been referred by a friend of Santore's named Tee, and stated that they had money and wanted some "action" for it. Appellant stated that in the following three or four weeks he was frequently contacted by either or both of the agents concerning their desire to get their money working either in "numbers" or "horses" and that he was unable to find anything for them. Finally, Picini asked him whether he could get a connection for them from whom they could get narcotics. Santore informed him he had nothing to do with "that stuff" and had never had anything to do with it. The agents complained that their money was dwindling and Picini gave him $300 as a gift and urged him again to try to make a connection for them. Appellant testified that he asked various people about "stuff" and finally found a man called Valle who said he could get some and informed him of the price. The information was passed along to the agents who supplied the money which he turned over to Valle from whom he got instructions regarding the delivery of the heroin on March 23, 1957. There was additional testimony as to subsequent pressure from the agents for more narcotics and new contacts.

█ Even a summary of the evidence on this issue indicates the insubstantial nature of the first issue raised by appellant. The evidence elicited at the trial

was certainly susceptible of more than one conclusion. Appellant inferentially recognizes this fact, for he urges this court to ignore much of the testimony of the government agents, asserting that it is too incredible to be believed. On the contrary, it is not only believable but it was accepted by a jury. We find no substance in this contention and therefore must consider the second point raised by appellant.

■ Relying entirely upon the Supreme Court's opinion in Sherman v. United States, 1958, 356 U.S. 369, 78 S. Ct. 819, 2 L.Ed.2d 848, appellant asserts that the trial court should have decided whether or not he had been entrapped even though the issue involved controverted questions of fact. A reading of the cited opinion clearly shows that his reliance is misplaced. Although support for this proposition may be found in the concurring opinion of Justice Frankfurter, the majority opinion delivered by Chief Justice Warren clearly refused to reconsider the principles enunciated in Sorrells v. United States, 1932, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, and applied them to the disposition of the case. In Sorrells the judgment was reversed, for the Supreme Court found that the trial court was in error in refusing to submit the issue of entrapment to the jury. As noted in the Sherman opinion, the cases in the Courts of Appeals since Sorrells have unanimously concluded that unless it can be decided as a matter of law, the issue of whether a defendant has been entrapped is for the jury. This court has so held on a number of occasions. United States v. Klosterman, 3 Cir., 1957, 248 F.2d 191; United States v. Sawyer, 3 Cir., 1954, 210 F.2d 169; United States v. Brandenburg, 3 Cir., 1947, 162 F.2d 980, certiorari denied 332 U.S. 769, 68 S.Ct. 80, 92 L.Ed. 354. The instant case falls squarely within that principle.

On the same day that Sherman was decided, the Supreme Court decided Masciale v. United States, 1958, 356 U.S. 386, 78 S.Ct. 827, 2 L.Ed.2d 859. In that case, as in this, there was conflicting evidence on the issue of entrapment, and the district court submitted the issue to the jury. The Supreme Court upheld this action.

The other point raised by the appellant is without merit.

The judgment will be affirmed.