**Leonard Joseph BLACKWELL, Appellant,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 18149.**

United States Court of Appeals Ninth Circuit.

Feb. 7, 1963.

John P. Moody, San Diego, Cal., for appellant.

Francis C. Whelan, U. S. Atty., Thomas R. Sheridan, Asst. U. S. Atty., Chief, Criminal Section; and Elmer Enstrom, Jr., Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before CHAMBERS, STEPHENS and JERTBERG, Circuit Judges.

JERTBERG, Circuit Judge.

Following trial to the court sitting without a jury, trial by jury having been expressly waived by appellant in the form and manner set forth in Rule 23(a) F.R. Crim.P., appellant was convicted on each count of a three-count indictment charging violations of the narcotic laws of the United States.[1]

The district court sentenced appellant to five years imprisonment on each of Counts One and Two, the sentences to run concurrently, and on Count Three imposition of sentence was suspended and appellant placed on probation for a period of five years.

The main question presented on this appeal is whether the district court erred

---

1. Count One charged that appellant fraudulently and knowingly imported a narcotic drug into the United States from Mexico contrary to 21 U.S.C. § 173. Count Two charged a violation of 21 U.S.C. § 174 in that appellant knowingly and unlawfully received, concealed and facilitated the transportation and concealment of the same narcotic drug, knowing that the same had been imported and brought into the United States contrary to law. Count Three charged a violation of 18 U.S.C. § 1407 in that appellant failed to register with a Customs official as a convicted violator of a narcotic law of the State of California when he entered the United States from Mexico and failed to surrender the certificate required by law to be obtained by him upon leaving the United States.

in failing to acquit the appellant on the ground that the evidence establishes as a matter of law his defense of entrapment.

Appellant concedes that the evidence produced by the Government fully supports the charges contained in the indictment. In fact, appellant acknowledges that facts testified to by appellant in his own behalf would likewise support the charges contained in the indictment. Hence, our task is to determine whether the testimony of appellant, the two witnesses called by the appellant, and appellant's offer of proof, establish as a matter of law his defense of entrapment.

The undisputed facts received in the Government's case show that appellant, a citizen of the United States who had been convicted on June 30, 1960 of the sale of narcotics in violation of the Narcotic law of the State of California, while in Mexico on November 12, 1961, placed a narcotic drug in a cavity of his body and then proceeded to the San Diego Port of Entry where he walked into the United States in the late afternoon of November 12th without having registered as a convicted narcotic violator. Upon inquiry by a Customs official of the United States, appellant stated that he was not in possession of any narcotic drugs. Appellant was held under surveillance and on the following morning ejected the narcotic drug which, since his departure from Mexico, had remained concealed in a cavity of his body.

In support of his defense of entrapment, the evidence received and offered by appellant may be summarized as follows:

Appellant testified on his own behalf that the occasion of his arrest was his first visit to Mexico; that he had been using narcotics on and off since 1949; that he had been convicted of violating the Narcotic law of the State of California; that he first met Dean in San Francisco on the night of November 11th, and that although he had seen him before, he had never had any personal acquaintance with him; that he knew Dean as an addict and seller of narcotics;

that on the night of November 11th, Dean told appellant that he had contacts in Mexico where he could get narcotic drugs of good quality; that Dean importuned appellant to go to Mexico to obtain narcotics; that it was easy for Dean to contact suppliers there; that good "stuff" could be obtained cheap; that it could be "cut" and the amount tripled; that there was little risk in going to Mexico; that Dean impressed upon appellant that the prospect was something appellant could not afford to pass up; that appellant borrowed money from several acquaintances including his girl friend with whom he was living; that appellant purchased return airplane tickets for Dean and himself and on the morning of November 12th, the two of them flew to San Diego; that upon arrival at San Diego, at Dean's suggestion the return airplane tickets were left at the home of relatives of Dean; that the two hitchhiked to Mexico; that appellant was not going into Mexico at first as Dean was to bring the narcotics into the United States in a cavity in his body; that appellant accompanied Dean into Mexico to keep Dean from running off with any money and not returning; that appellant was aware of some law that required an addict or narcotic violator to register; that Dean registered as a narcotic addict but advised appellant not to do so; that appellant felt the risk was small; that upon arrival in Mexico, Dean made contact with a cab driver who took them to a motel where they waited for the cab driver to get the narcotics; that the cab driver returned to the motel with the narcotics; that the drug was tested by Dean and that appellant paid for the narcotics after the test had been made; that Dean appeared to "pass out"; that at this point Dean began to show symptoms of an overdose of narcotics, causing great concern to appellant; that it became clear to

appellant that Dean was in no condition to transport the narcotics; that Dean left appellant alone with the narcotics and in order to protect his and his friend's investment, appellant concealed the narcotics in a cavity of his body; that he and Dean started back to the Border and before reaching the Border Dean made a telephone call.

On cross-examination, appellant admitted the previous conviction for violation of the Narcotic law of California above noted and two prior felony convictions, and that he had stated to a Customs official that the sole purpose of the trip was to purchase narcotics for himself and his friends who had advanced the money to pay the expenses of the trip and the purchase price of the narcotics; that good "stuff" was hard to come by in San Francisco; and if he should sell any of it in San Francisco, the sale price would be for what appellant put into it.

A Customs inspector testified that that three or four minutes after appellant entered the United States, a person named Willie Dean entered the United States in the pedestrian lane. Dean proceeded to the office to register as a narcotic addict where he was searched. He was not observed to be under the influence of a narcotic nor did he have any contraband on his person. Dean was released but before leaving, advised the Customs official that appellant had narcotics somewhere on his person.

Dean, called as a witness by appellant, testified that he was a narcotic addict; that he had known appellant when Dean lived in San Francisco; that they were not close friends; that appellant informed Dean that he was going to San Diego to play the races; that no mention was made concerning the purchase of narcotics in Mexico; that appellant would pay Dean's expenses to San Diego where Dean would repay appellant; that upon arrival at San Diego, the two

proceeded to the Border; that Dean registered as a narcotic addict; that appellant advised him he was not going to register; that all the arrangements for the purchase of narcotics in Mexico were made by appellant; that appellant concealed the narcotic drug in a cavity of his body; that on the way to the Border, Dean telephoned the Customs official because he didn't want to get himself involved; and that on other prior occasions Dean had gone to Mexico with others for the purpose of purchasing narcotics.

Appellant made the following offer of proof:

To prove by the testimony of Dean that he had informed on other occasions and had received from the Customs officials as remuneration special privileges in crossing the Border; to prove by the testimony of a person named Large, who had gone to San Diego for the purpose of obtaining narcotics, that Dean had assisted him in purchasing heroin in Mexico in the same manner as testified to by appellant in this instance; that Dean turned Large in to Customs authorities using the same "technique" as used in the instant case; and to prove, by a Customs Agent, that Dean informed on other persons on prior occasions and received remuneration and special privileges from the Government on such occasions.

The District Judge while sustaining an objection to the offer of proof, stated that he would assume to be true the matters stated in the offer of proof; that he would assume to be true appellant's testimony; and contrary to Dean's testimony, would assume that Dean was a paid informer.

It was the view of the trial Judge in light of appellant's own testimony notwithstanding the assumptions made that appellant failed to establish as a matter of law his defense of entrapment.

The Supreme Court, in Sherman v. United States, 356 U.S. 369, at page 372,

78 S.Ct. 819, at page 820, 2 L.Ed.2d 848 (1958), stated:

"In Sorrells v. United States, 287 U.S. 435, [53 S.Ct. 210, 77 L.Ed. 413] this Court firmly recognized the defense of entrapment in the federal courts. The intervening years have in no way detracted from the principles underlying that decision. The function of law enforcement is the prevention of crime and the apprehension of criminals. Manifestly, that function does not include the manufacturing of crime. Criminal activity is such that stealth and strategy are necessary weapons in the arsenal of the police officer. However, 'A different question is presented when the criminal design originates with the officials of the Government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute.' 287 U.S. at 442, [53 S.Ct. at 212] Then stealth and strategy become as objectionable police methods as the coerced confession and the unlawful search. Congress could not have intended that its statutes were to be enforced by tempting innocent persons into violations.

"However, the fact that government agents 'merely afford opportunities or facilities for the commission of the offense does not' constitute entrapment. Entrapment occurs only when the criminal conduct was 'the product of the *creative* activity' of law-enforcement officials. (Emphasis supplied.) See 287 U.S., at 441, 451 [53 S.Ct. at 216]. To determine whether entrapment has been established, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal. The principles by which the courts are to make this determination were outlined in Sorrells. On the one hand, at trial the accused may examine the conduct of the government agent; and on the other hand, the accused will be subjected to an 'appropriate and searching inquiry into his own conduct and predisposition' as bearing on his claim of innocence. See 287 U.S., at 451 [53 S.Ct. at 216.]"

In Sorrells v. United States, supra, the Court stated, at p. 451, 53 S.Ct. at 216:

"For the defense of entrapment is not simply that the particular act was committed at the instance of government officials. That is often the case where the proper action of these officials leads to the revelation of criminal enterprises. Grimm v. United States, supra [156 U.S. 604, 15 S.Ct. 470, 39 L.Ed. 550]. The predisposition and criminal design of the defendant are revelant. But the issues raised and the evidence adduced must be pertinent to the controlling question whether the defendant is a person otherwise innocent whom the Government is seeking to punish for an alleged offense which is the product of the creative activity of its own officials. If that is the fact, common justice requires that the accused be permitted to prove it. The Government in such a case is in no position to object to evidence of the activities of its representatives in relation to the accused, and if the defendant seeks acquittal by reason of entrapment he cannot complain of an appropriate and searching inquiry into his own conduct and predisposition as bearing upon that issue. If in consequence he suffers a disadvantage, he has brought it upon himself by reason of the nature of the defense."

See also Masciale v. United States, 356 U.S. 386, 78 S.Ct. 827, 2 L.Ed.2d 859 (1958), and Walker v. United States, 298 F.2d 217 (9th Cir., 1962).

Clearly, the district court was fully justified in concluding that appellant was an "unwary criminal" and not an "unwary innocent." The judgment of the district court is affirmed.