UNITED STATES of America,
Plaintiff-Appellee,

v.

Anthony GEORGIOU, Defendant-
Appellant.

No. 14409.

United States Court of Appeals
Seventh Circuit.

June 22, 1964.

Rehearing Denied July 24, 1964.

Certiorari Denied Nov. 9, 1964.
See 85 S.Ct. 191.

Charles A. Bellows, Jason E. Bellows, Sherman C. Magidson, Chicago, Ill., for appellant.

Edward V. Haurahan, U. S. Atty., John Peter Lulinski, John Powers Crowley, Donald E. Joyce, Chicago, Ill., for appellee.

Before HASTINGS, Chief Judge, and CASTLE and KILEY, Circuit Judges.

HASTINGS, Chief Judge.

Defendant Anthony Georgiou appeals from a judgment of conviction, following a trial by jury, for violation of Title 18 U.S.C.A. § 474.[1] He was charged in an indictment with the crime of unlawful possession of certain metal plates with intent to use such plates in counterfeiting One Dollar Silver Certificates.

The sole issue before us on this appeal is whether defendant was entrapped by Agents of the Secret Service into committing the crime of which he was found guilty.

By invoking the defense of entrapment, defendant admits commission of the offense charged in the indictment.

The contested issues of fact and credibility of witnesses bearing on the defense of entrapment were resolved by the jury's verdict. We accept the result as we would a similar determination made by a trial to the court without a jury. United States v. Jones, 7 Cir., 302 F.2d 46, 47 (1962); United States v. Perkins, 7 Cir., 190 F.2d 49, 51 (1951).

1. "§ 474. Plates or stones for counterfeiting obligations or securities
* * * * *
"Whoever has in his control, custody or possession any plate, * * * made after or in the similitude of any plate, * * * from which any such obligation or other security [of the United States] has been printed, with intent to use such plate, * * * or to suffer the same to be used in forging or counterfeiting any such obligation or other security * * *;
* * * * *
"Shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both."

Considering the evidence in the light most favorable to the Government, the jury would have been warranted in finding the following factual situation concerning the issue of entrapment.

Defendant was a family man residing in Skokie, Illinois. He operated an automobile sales business in Chicago. Thomas Mosley was a bus driver for Chicago Transit Authority and also was a tow-truck driver. Defendant and Mosley had known each other for some time.

On November 8, 1962, defendant and Mosley met and engaged in conversation. No one else was present. Mosley was dressed in his bus driver's uniform which defendant then saw for the first time. The conversation began with talk about Mosley's salary as a bus driver. Mosley said there were other ways of making money, in response to defendant's statement that his [Mosley's] salary of "$150 a week is not much." In answer to defendant's inquiry, Mosley casually mentioned a warning on the Transit Authority bulletin board "to be on the lookout for counterfeit one dollar bills." Mosley continued, "If that is making money, the fellows who are making these bills, they don't know which [side] is up."

Whereupon, defendant asked Mosley, "Say, you got some money, how would you like to buy a set of counterfeit plates?" Defendant said he had seen the plates about six months ago and that they were available then. Thinking these plates were the ones used for printing the counterfeit one dollar bills concerning which he had been alerted by his employer, Mosley told defendant he might be interested in them for an out of town buyer. Defendant replied that they wanted "five G's, five grand" for them. Mosley requested defendant to "see what you can find out for me"; and to "give me a call." Defendant answered, "You give me a call." The conversation ended at that point and the two men separated.

Four days later, Mosley telephoned the United States Secret Service office and reported he had some information regarding counterfeit plates. He made an appointment to talk to an Agent later that day. Mosley was unknown to the Secret Service at that time. He talked to Agent Bolden. Later, he went to the office of the Special Agent in charge and told of his conversation with defendant.

Mosley cooperated with the Secret Service and subsequently made several telephone calls to defendant and personally saw defendant and urged him to get the plates. Mosley quoted a price of $7,000 for the plates, of which defendant and Mosley each were to get $1,000. Arrangements were made for the delivery and payment.

During one of these meetings prior to delivery of the plates, defendant offered to sell $30,000 of counterfeit money to Mosley.

During the intervening meetings between defendant and Mosley there was much talk by defendant about his difficulty in dealing with his "people." Defendant said, "This guy that gave me this plate, he is big people, he is mean people"; "don't let anything happen to this plate—this man has a gun to my head"; "there can't be any slip-up in this"; "these people are very rough people."

At one point in the negotiations, defendant asked Mosley which deal he wanted first, the $30,000 or the plates; that they were separate deals with separate people.

On January 4, 1963, the sale and purchase of the back plate was consummated. The arrest, indictment, trial and conviction followed.

The law applicable to the defense of entrapment in federal courts has long been established in the landmark cases of Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, 86 A.L.R. 249 (1932) and Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958). The standards laid down in these decisions have been followed by this circuit and all others. We need not review the many cases relating to them.

Entrapment has been defined to exist "when the criminal design originates

with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute." Sorrells v. United States, supra, 287 U.S. at 442, 53 S.Ct. at 212. See 22 C.J.S. Criminal Law § 45(2) (1961).

■ The same acts may or may not constitute entrapment, depending upon the "conduct and predisposition" of the accused. See Sherman v. United States, supra, 369 U.S. at 373, 78 S.Ct. 819 and Sorrells v. United States, supra, 287 U.S. at 451, 53 S.Ct. 210.

Chief Justice Warren, speaking for the Court in Sherman, 369 U.S. at 372–373, 78 S.Ct. at 821 said:

"However, the fact that government agents 'merely afford opportunities or facilities for the commission of the offense does not' constitute entrapment. Entrapment occurs only when the criminal conduct was 'the product of the *creative* activity' of law-enforcement officials. (Emphasis supplied.) See 287 U.S., at pages 441, 451, 53 S.Ct., at pages 212, 216. To determine whether entrapment has been established, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal. The principles by which the courts are to make this determination were outlined in Sorrells. On the one hand, at trial the accused may examine the conduct of the government agent; and on the other hand, the accused will be subjected to an 'appropriate and searching inquiry into his own conduct and predisposition' as bearing on his claim of innocence. See 287 U.S., at page 451, 53 S.Ct., at page 216."

The Supreme Court, in Sherman, found as a matter of law that defendant was entrapped and held "that unless it can be decided as a matter of law, the issue of whether a defendant has been entrapped is for the jury as part of its function of determining the guilt or innocence of the accused." Id., 366 U.S. at 377, 78 S.Ct. at 823, citing in a footnote, *inter alia,* United States v. Cerone, 7 Cir., 150 F.2d 382 (1945), cert. denied, 326 U.S. 756, 66 S.Ct. 97, 90 L.Ed. 454.

■ It requires little analysis of the record evidence in this case to say that the jury would have been amply justified in finding that defendant was not entrapped. Prior to reporting defendant's offer of the counterfeiting plates to the Secret Service, Mosley, was unknown to the Agents. Defendant's initial offer of the plates to Mosley was entirely unsolicited by Mosley. On several occasions, including their first reported conversation, it appears that defendant invited Mosley to "give me a call." Defendant's attempt to sell Mosley $30,000 of counterfeit money is hardly consistent with defendant's attempt to establish good character. Finally, Mosley's report of the first offer to the Secret Service is scant support for a claim of entrapment. After hearing the trial court's instructions on entrapment, the jury found defendant guilty.

The record is barren of any showing of entrapment as a matter of law.

We have carefully considered defendant's complaints concerning the trial court's limitation of his cross-examination of Government witnesses and improper comment to the jury in argument by Government counsel. We find such claims of error to be wholly without merit.

The judgment of the district court is affirmed.

Affirmed.