UNITED STATES of America, Plaintiff,

v.

Clifford RUTLEDGE, Defendant.

No. H Cr 75–22.

United States District Court, N. D. Indiana, Hammond Division.

July 25, 1975.

John R. Wilks, U. S. Atty., Fort Wayne, Ind., Andrew B. Baker, Jr., Asst. U. S. Atty., Hammond, Ind., for plaintiff.

Cecil B. Cohen, East Chicago, Ind., for defendant.

MEMORANDUM AND DECISION

ALLEN SHARP, District Judge.

*Statement of the Case*

The defendant, Clifford Rutledge, was charged by indictment with the distribu-

tion of heroin in violation of Title 21, United States Code Section 841(a)(1) and entered a plea of not guilty. The defendant filed a written waiver of his right to a trial by jury on March 13, 1975, which waiver was approved by the Court. The trial in this cause was held before the Court on June 26, 1975.

## Facts

The Government's chief witness was Thomas L. Hendricks, a police officer employed by the Hammond City Police Department for the past three years. On December 8, 1974 Officer Hendricks, while on assignment to the Lake County Multi-Narcotics Agency as an undercover agent, drove to the defendant's residence accompanied by his informant, James Freeman, who was personally acquainted with the defendant. The defendant and a Henry Hill entered the vehicle, sitting in the rear seat behind Hendricks and his informant. Officer Hendricks and the defendant discussed the sale of heroin and the defendant indicated that the smallest quantity that Hendricks could purchase would be $50.00 worth of heroin and Hendricks told the defendant that he wanted to purchase that amount. The defendant also stated that Hendricks and Freeman had caught him just in time because he was on his way to purchase heroin for himself and some others, but that in the future if the two wished to purchase heroin they would have to deal directly with him or with Henry Hill.

The four men drove to the area of the 4900 block of Melville Avenue in East Chicago, Indiana at which time Hendricks dropped the defendant off in the middle of the block and then circled the block pursuant to the defendant's instructions. Freeman gave the defendant $50.00 for the purchase of the heroin at the time the defendant left the car. The defendant entered the residence of a Dennis Shaw and obtained the heroin. After circling the block twice Hendricks picked up the defendant at the point where he had been dropped off. The defendant handed Hendricks a plastic wrapped container holding two $25.00 bags of heroin, commenting that the bags were a little bigger than usual. At the time of trial Hendricks identified the defendant as the man from whom he purchased the heroin.

Hendricks kept the container of powder obtained from the defendant in his possession until he took it to the Northwest Criminal Toxicology Laboratory for analysis. There Carsten Falkenberg, a qualified analytical chemist employed at the Laboratory, determined that the powder contained heroin. The powder, the container and the laboratory envelope were admitted into evidence at the trial.

The defendant testified that the reason he got involved in the distribution of the heroin to Hendricks and Freeman was that he felt sorry for Freeman at the time the two came to his home because he thought Freeman was going through withdrawal. However, the defendant was unable to point to any particular symptoms of withdrawal which led him to that conclusion. Hendricks, based on his experience as a police officer, testified that he did not observe any symptoms of withdrawal on the part of Freeman.

## Law

The defendant has admitted the distribution of heroin involved in this cause but raises the defense of entrapment. The defendant argues that he felt sorry for James Freeman and as a result was entrapped into the distribution. However, such a conclusion is not merited by the facts in this case and the law regarding entrapment. The defendant was not acting out of sympathy for the informant because the informant was not ill nor undergoing withdrawal; further the defendant evidenced his own predisposition to distribute the heroin by his statements that Hendricks and the informant caught him just in time and that the two should deal directly with him in the future.

Any discussion of the defense of entrapment must necessarily involve a consideration of a trilogy of Supreme Court cases. In *Sorrells v. United States,* 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932), the court recognized that the defense of entrapment would be available where repeated efforts by a Government Agent induced an innocent person to illegally sell liquor. In that prohibition era case, the nation's highest court found that the defendant did not have the requisite predisposition to commit the crime.

In *Sherman v. United States,* 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), the court concerned itself with entrapment in the context of an informer-narcotics sale. In*Sherman,* following repeated overtures from a Government informer, the defendant sold narcotics. Chief Justice Warren stated:

"To determine whether entrapment has been established, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal."

The most recent statement on entrapment from the Supreme Court of the United States is in *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), in which Mr. Justice Rehnquist, speaking for the Supreme Court, stated:

"Several decisions of the United States district courts and courts of appeals have undoubtedly gone beyond this Court's opinions in Sorrells and Sherman in order to bar prosecutions because of what they thought to be, for want of a better term, 'overzealous law enforcement.' But the defense of entrapment enunciated in those opinions was not intended to give the federal judiciary a 'chancellor's foot' veto over law enforcement practices of which it did not approve. The execution of the federal laws under our Constitution is confined primarily to the Executive Branch of the Government, subject to applicable constitutional and statutory limitations and to judicially fashioned rules to enforce those limitations. We think that the decision of the Court of Appeals in this case quite unnecessarily introduces an unmanageably subjective standard which is contrary to the holdings of this Court in Sorrells and Sherman.

Those cases establish that entrapment is a relatively limited defense. It is rooted not in any authority of the Judicial Branch to dismiss prosecutions for what it feels to have been 'overzealous law enforcement,' but instead in the notion that Congress could not have intended criminal punishment for a defendant who has committed all the elements of a prescribed offense, but was induced to commit them by the Government.

Sorrells and Sherman both recognize 'that the fact that officers or employees of the Government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution,' 287 U.S., at 441, 53 S.Ct., at 212, 356 U.S., at 372, 78 S.Ct., at 820. Nor will the mere fact of deceit defeat a prosecution, see e. g., Lewis v. United States, 385 U.S. 206, 208–209, 87 S.Ct. 424, 425–427, 17 L.Ed.2d 312 (1966), for there are circumstances when the use of deceit is the only practicable law enforcement technique available. It is only when the Government's deception actually implants the criminal design in the mind of the defendant that the defense of entrapment comes into play."

While the defendant's memorandum, cites *Sorrells* and *Sherman* it does not cite *Russell. Russell* is the last word from the Supreme Court on entrapment and the reasoning and result in *Russell* are highly relevant here. Also highly relevant here is the factual context of *Russell.*

For the immediate aftermath of *Russell* in this Circuit see *United States v. McGrath,* 7 Cir., 494 F.2d 562 (1974). The treatment and result that this Court reaches in this case is also well supported in *United States v. Smith,* 7 Cir., 508 F.2d 1157 (1975). Additionally, it is this

Court's view that the facts in this case would even pass muster under the stricter standards suggested by Chief Judge Swygert in his dissent beginning at page 1160 of 508 F.2d.

In cases tried to a jury, when the issue of entrapment is relevant, the court gives the following instruction:

"The defendant asserts that he was a victim of entrapment as to the crime charged in the indictment.

Where a person has no previous intent or purpose to violate the law, but is induced or persuaded by law enforcement officers or their agents to commit a crime, he is a victim of entrapment, and the law as a matter of policy forbids his conviction in such a case.

On the other hand, where a person already has the readiness and willingness to break the law, the mere fact that Government agents provide what appears to be a favorable opportunity is not entrapment. For example, when the Government suspects that a person is engaged in the illicit sale of narcotics, it is not entrapment for a Government agent to pretend to be someone else and to offer, either directly or through an informer or other decoy, to purchase narcotics from such suspected person.

If, then, the jury should find beyond a reasonable doubt from the evidence in the case that, before anything at all occurred respecting the alleged offense involved in this case, the defendant was ready and willing to commit crimes such as charged in the indictment, whenever opportunity was afforded, and that the Government offi-

cer or their agents did no more than offer the opportunity, then the jury should find that the defendant is not a victim of entrapment.

On the other hand, if the evidence in the case should leave you with a reasonable doubt whether the defendant had the previous intent or purpose to commit any offense of the character here charged, and did so only because he was induced or persuaded by some officer or agent of the Government, then it is your duty to acquit him.

In determining whether entrapment has been established, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal."

As the trier of fact in this case the Court finds that any deception on the part of Hendricks did not implant the criminal design in the mind of the defendant, Clifford Rutledge. Statements made by the defendant to Hendricks indicate that the defendant had been on his way to procure heroin for himself and others and indicate a willingness on the behalf of the defendant to sell heroin at a future time. We do not find here the kind of a factual context that appears in *Sorrells* and *Sherman* since there were no repeated efforts to induce the defendant to distribute heroin.

Therefore, consistent with the Court's responsibility in this case to weigh the evidence and to determine the credibility of the witnesses the Court finds that the defendant has failed to establish either as a matter of fact or law the defense of entrapment. Therefore, the defendant is adjudged and determined to be guilty of the offense charged in the indictment.