SMITH, Justice:
This case involves an alleged concerted attack by appellants upon an officer of the Mississippi Highway Safety Patrol which followed upon the arrest of appellant Baldwin for driving his automobile 83 miles per *158 hour on U. S. Highway 61, where the legal limit is 65. It appears to be conceded that Baldwin was, in fact, driving his automobile at that speed in violation of the legal limit at the time of his arrest.
Baldwin’s party, consisting of relatives and friends, all residents of the State of Michigan, were traveling in two automobiles, with Baldwin’s car some distance ahead of the second car. Shortly after the patrolman had arrested Baldwin, the second automobile containing appellant’s cousins, Samuel Carter, William Carter and James Carter, and their respective families, arrived upon the scene. From this point on, the evidence for the prosecution and that for defense is in irreconcilable conflict. The version of Baldwin was to the effect that the officer adopted a hostile, insulting and “racist” attitude toward him, mistreated him, and then arbitrarily and unreasonably sought to take him to jail instead of giving him a “ticket” for the violation. The testimony of the patrol officer, and other witnesses who testified for the prosecution, directly contradicts this account of what happened in all material particulars. By its verdict, the jury rejected the account of the affair given by appellants and their witnesses and accepted the version supported by the testimony of the witnesses for the prosecution.
According to the officer, following Baldwin’s arrest, Baldwin’s attitude was hostile and defiant. Baldwin was informed by the officer that it would be necessary to take him before a magistrate at the jail in Tun-ica, the county seat, a few miles further on. There, he was told, the “ticket” would be dealt with by that official. Whereupon, Baldwin told the officer that, “You’re not taking me to any goddam jail.” The officer then decided, not unreasonably, that it was expedient that handcuffs be placed upon Baldwin for the journey to the magistrate, as the officer was traveling alone, upon a stretch of highway through the open country. As the officer reached for his handcuffs, he was grabbed from behind by two of the Carters. While they held the officer, Baldwin beat him with his fists, as well as with the patrolman’s pistol which he had taken from him, and kicked him. Although the testimony at this point is in direct conflict as to what was said, as well as to what occurred throughout this episode and as to what followed, there can be no doubt that, in the course of the struggle between the officer and his several assailants, the officer sustained severe cuts and abrasions about his face and head, which required some 15 to 17 stitches. The blows struck with the pistol bent the trigger guard so that it was impossible for Baldwin to pull the trigger when he attempted to shoot the officer.
After the struggle had continued for a time, the officer in some manner managed to extricate himself from his attackers and run to the patrol car which he entered and locked the door. Aid was summoned by radio and eventually arrived. Meanwhile the arresting officer had obtained his shotgun from the patrol car and was attempting to hold appellants. Mistreatment at this juncture is also alleged by appellants and denied by witnesses for the prosecution. This claim of abuse, including a claim by Baldwin that his nose was broken, was denied, and seems to have been refuted also by the introduction of a full face photograph, taken when the appellants arrived at the jail, which reflects that there was no visible sign of injury.
Appellants were represented at their trial by able counsel of their choice, a member of the Michigan Bar. On this appeal he raises two main questions.
These questions are stated in appellants’ brief as follows:
Whether or not a state statute which allows broad arrest discretion to police officers when such discretion is applied in a discriminatory manner against out-of-state residents, and when race is specifically shown to be a factor in the exercise of that discretion, violates the equal protection of the law and/or the privileges and immunities clauses of the *159 Fourteenth Amendment to the Constitution of the United States ?
Whether or not the defendants’ constitutional rights to due process of law and right to counsel were violated by the court:
1. Ordering their trial continued without prior notice and over the objections of their counsel beyond the normal evening adjournment time and into the early morning hours of the next day
2. By the fact that their counsel was constrained to hurriedly prepare instructions to the jury on their behalf on the steps of the court house under street lights at night
3. When their counsel is afforded a period of only fifteen minutes within which to prepare a closing argument covering a total of fifteen hours of trial testimony and when there were two prosecutors participating in the trial of the cause who shared both the preparation and the giving of the State’s closing argument — one opening and one closing ?
The argument upon the first question is directed toward the proposition that, while residents of this state, in cases of traffic law violations, are given tickets or citations, which only require them to appear before a magistrate, and are not taken into custody or taken before a magistrate by an officer, but are permitted to go on their way to appear at a time and place specified in the ticket or citation, nonresidents are not cited to appear but are taken before a magistrate by the arresting officer prior to being released, and that this amounts to unconstitutional discrimination against nonresidents.
Prior to the trial, the question now argued was sought to be raised by motion. In the motion, it was asserted that appellants’ arrest had resulted from “the exercise of racially discriminatory discretion exercised by the arresting officer in placing Baldwin under arrest for traffic violation rather than issuing a citation to appear.” No proof of any kind was offered in support of this preliminary motion and it was overruled. The point was not raised again in the course of the ensuing trial at any time. In Brown v. State, 252 So.2d 885, 887 (Miss.1971) it was held:
It is a well-settled rule in this state that a motion is at issue without further pleading and that the allegations thereof do not amount to any proof of the facts stated therein. It is the duty of the movant to support his motion by proof and in the absence of proof in support of the motion, the presumption in favor of the correctness of the action of the trial court will prevail. Harvey v. State, 218 So.2d 9 (Miss.1969).
This Court said in McMillan v. Tate, 260 So.2d 832, 833 (Miss.1972):
In the absence of any proof in support of the motion we cannot put the trial court in error for overruling the same.
See also Loden v. Joslin, 229 So.2d 825 (Miss.1969), citing Harvey v. State, 218 So.2d 9 (Miss.1969).
The jury, in returning his verdict, accepted the version of facts testified to by the witnesses for the prosecution and rejected that supported by witnesses for the defense. According to the prevailing evidence, the officer told Baldwin that he was taking him immediately before “a magistrate at the jail” in Tunica where the charge would be dealt with. In view of Baldwin’s intransigence, hostility and his defiant statement to the officer that he wasn’t going “no where with you,” the actions of the officer under the circumstances were neither unreasonable nor unlawful.
There was no motion for a new trial following the verdict.
It is a necessity, inherent in the situation itself, that nonresidents of the state arrest *160 ed on the highway for traffic violation be taken immediately before a magistrate, instead of merely being cited to appear, since there is no practical method of enforcing compliance with the citation. This same practice, as a matter of common knowledge, is followed by city police in the arrest of traffic violators who do not reside in their city. Regulation of traffic is a matter of vital consequence in this country and a mere gesture, such as the giving of a ticket to a nonresident violator, could never be effective. This kind of discretion vested in an officer as to whether to arrest a traffic violator or merely to issue him a summons is not in and of itself a violation of equal protection guarantees. In fact, this same sort of discretion is recognized nationally as affording officers alternatives in the face of such violations and some states, including Wisconsin, have statutory authority which legislatively recognizes such discretion. So long as such discretion is not exercised on the basis of an impermissible standard such as race, discretion as to whether to arrest or merely to issue a citation is not constitutionally offensive. As a matter of fact:
The notice to appear is ordinarily used only for persons who reside within the jurisdiction served by the particular officer. A county traffic officer is likely to arrest a violator who is not a resident of the county, while a state conservation warden will probably use a notice to appear for all state residents. Even in the case of residents, an arrest will be made if it is apparent that the person is about to abscond.
(Wayne R. LaFave, Arrest, The Decision to Take a Suspect into Custody, page 180 (1965).
The vesting of such discretion in members of the Mississippi Highway Safety Patrol is not discriminatory, in the absence of resort to impermissible standards such as race, since such discretion is an aspect of the police power reasonably exercised.
By arrest in this context is not meant incarceration, but merely means that the individual is taken to a magistrate, who immediately holds trial and if guilt is determined, sets the penalty. The United States Supreme Court has not determined that every classification which distinguishes between groups of people is unconstitutional and the present classification, in view of its reasonableness, cannot be said to violate equal protection guarantees.
The following statement was made in the case of United States v. Sacco, 428 F.2d 264 (9th Cir. 1970):
The conscious exercise of selectivity in enforcement is not in itself a constitutional violation where it is not further alleged that “the selection was deliberately based upon an unjustifiable standard such as race, religion or other arbitrary classification.”
(428 F.2d at 271).
Although Baldwin sought to place his arrest upon “racist” grounds, this was directly contradicted and was a fact issue for the jury, as the trier of facts.
The second proposition advanced by appellants on this appeal is to the effect that their constitutional right to due process was violated by the trial court in continuing the trial into the night, so that appellants’ counsel had to prepare his jury instructions hurriedly and had only fifteen minutes in which to prepare his closing argument. An objection raising this point was not interposed by defense counsel in the course of the trial, and, consequently, no opportunity was afforded the trial court to rule upon it. It is true that from time to time defense counsel stated that he “wished the record to show” this or that, but the trial court was not called upon to rule.
The offense occurred in Tunica County, the county seat of which is Tunica, a rather small community. The court term, at which this case was tried, is fixed by stat *161 ute at twelve days. During this time this case, as well as other civil and criminal cases on the docket of the court, had to be dealt with. When the court recessed for “supper” the courthouse was closed and locked. This was by no means done to deny counsel access thereto during the recess for the- evening meal and was not, in any sense, directed against him at all.
Court dockets are crowded throughout the country. It is not unusual in this state to utilize the evening hours to complete a trial in progress. In any event, in this case, appellants are not shown to have been prejudiced thereby.
In order to appear and represent his clients, defense counsel, a member of the Michigan Bar, was free to act alone. He was not required to associate local counsel and he elected not to do so. When an attorney enters a foreign jurisdiction for the purpose of trying a case in the courts of that jurisdiction, association of local counsel often can be helpful in advising as to established court rules, practice and procedure, and state statutes which might have an application or be encountered in the trial of the case. Whether to associate local counsel' is, of course, a matter of individual judgment. In the case here, it does not appear that any preliminary investigation or research was done with respect to these local statutes or court rules. Counsel chose to stay in the City of Memphis, Tennessee, until the trial, and commuted from that city to Tunica, Mississippi, where the trial took place. When it appeared to the District Attorney that proposed requests for specific jury instructions, as required by Mississippi statute, were not going to be filed by defense counsel twenty-four hours in advance, as required by the published Circuit Court Rules, that official sought, although without success, to get in touch with defense counsel in Michigan so that he might apprise him of statutory and court rule requirements with respect to jury instructions.
Mississippi Code Annotated section 11-7-155 (1972) provides that the court may not grant any instruction to a jury sua sponte, but may only give the jury such instructions as shall have been prepared in writing and requested by respective counsel. Rule 14 of the published Rules of the Mississippi Circuit Courts, provides that desired instructions be prepared and filed at least twenty-four hours in advance, in order that objections thereto may be made by the opposite party and considered by the court.
In the event, however, the circuit judge waived the twenty-four hour requirement as to the instructions eventually requested by defense counsel. It was inconvenient, certainly, not to have available an office and secretary, but it is difficult to see how the state was responsible for it. The locking of the. courthouse while the court was absent during the interval of the recess for the evening meal was not done to keep counsel out. It does not appear that the court or the District Attorney knew that counsel had made no arrangement for a place where he might prepare to do whatever he considered necessary or expedient for the defense of his clients, including the preparation of instructions. Certainly no request was made for such accommodations or denied by any official of the State of Mississippi. Had there been a request, an arrangement could have been made, and doubtless would have been made, for counsel’s accommodation in this matter.
Before the trial commenced, defense counsel was aware that the state had already submitted its instructions to the court. The twenty-four hour Mississippi rule was waived in his favor. The decision to wait until the last moment to draft instructions was his.
Testimony in the record indicates that defense counsel desired to have the trial set for the date at which it actually was set “for his personal convenience” and was “very anxious” for such arrangements to *162 be made by the trial court. In spite of a crowded docket and in spite of cases which had been set for the following day, the trial court accommodated him.
Appellants were properly indicted and tried in the Circuit Court of Tunica County upon a charge of assault and battery in violation of Mississippi Code Annotated section 97-3-7 (1972), a felony.
The record reflects that they were vigorously and ably defended by their counsel in the trial court as well as on appeal in this Court. The evidence was sufficient to support the verdict of guilty returned by the jury. No prejudicial error having been shown to have occurred in the course of the trial, the conviction and sentences appealed from must be affirmed.
Affirmed.
GILLESPIE, C. J., and PATTERSON, INZER and SUGG, JJ., concur.