326 So.2d 322 (1976)
Rickey L. WALLS
v.
STATE of Mississippi.
No. 48835.
Supreme Court of Mississippi.
January 27, 1976.
*323 *324 John D. Sibley, Okolona, James S. Gore, Houston, for appellant.
A.F. Summer, Atty. Gen., by Wayne Snuggs, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before RODGERS, INZER and SMITH, JJ.
SMITH, Justice.
This case came to this Court from the Circuit Court of Pontotoc County, Mississippi. The appellant Rickey L. Walls has appealed from a judgment of conviction and sentence on a charge of a sale of a controlled substance, to-wit, barbiturates and methamphetamine, controlled drugs under the Uniform Controlled Substances Act of 1971.
The appellant was tried on March 12, 1974, and during the course of the trial he admitted selling pills to Mississippi Bureau of Narcotics Agent Danny Lowery. Dr. Arthur Hume, Director of the State Crime Laboratory, testified that the pills sold contained a derivative of barbituric acid phenobarbital and an amphetamine. The appellant alleged that he was entrapped into selling the controlled substance by actions of Agent Lowery and one Jerry Whitehead.
According to the testimony of Rickey L. Walls, he first met Jerry Whitehead on August 16, 1972, at a restaurant in Pontotoc. There was a later meeting between the two on either the 18th or 19th of August, 1972, at the same restaurant; and at this meeting Whitehead asked the appellant about the purchase of some marijuana. On August 20, 1972, Whitehead introduced Agent Danny Lowery to the appellant, and the agent inquired about purchasing some marijuana.
According to the appellant, Agent Lawery and Jerry Whitehead came to his home on August 27, 1972, and asked about purchasing some pills. The appellant informed the two that he did not have any pills, but would check to see if any of his acquaintances in Houlka might have some. He also informed them that they would have to give him the money to make a purchase if he found any pills. Rickey L. Walls located a man in Houlka who had some pills; thereupon, he returned and obtained fifteen dollars ($15.00) from Agent Lowery to make the purchase. He told the agent that it would be after dark before he would be able to pick up the pills. At this point, the agent and Jerry Whitehead asked the appellant if he would bring the pills to Pontotoc after obtaining them. He agreed to do so. The appellant, according to his testimony, gave the man in Houlka fifteen dollars ($15.00) as partial payment for eighty (80) pills, which he later gave to the agent. Agent Lowery gave Rickey L. Walls another thirty-eight dollars ($38.00) upon delivery of the pills, and since the appellant did not have any change, the agent instructed him to keep the fifty cents (50¢) change due. At the time of this transaction, Rickey L. Walls was seventeen (17) years of age.
The state offered testimony to contradict the appellant and his charge of entrapment by the authorities. Agent Lowery testified that he and Whitehead were to meet the appellant in Pontotoc on August 27, 1972, to make a purchase of "a hundred hits of speed." Because the appellant did not show up for the meeting, they went to his home. After talking with the appellant, the agent and Jerry Whitehead left. They later returned to his home and were informed by the appellant "that he couldn't get the stuff" because "there were two narcs watching people in Houlka." He informed them that he could get the pills later that night, but he needed some purchase money. According to Agent Lowery, Ray Walls, the appellant's father, agreed to give him the money to make the purchase. *325 Lowery specifically denied giving the appellant fifteen dollars ($15.00) or any money as an advancement for a purchase.
As grounds for appeal to this Court, the appellant argues:
(1) The court erred in failing to sustain appellant's motion to transfer the cause to the Youth Court of the First Judicial District of Chickasaw County.
(2) The court erred in overruling appellant's motion to dismiss the indictment.
(3) The court erred in failing to grant a mistrial after objections to irrelevant, inflammatory and prejudicial testimony by two of the state's witnesses.
(4) The verdict is against the overwhelming weight of the evidence in that the actions of the state constituted illegal entrapment of appellant.
(5) The court erred in giving oral instructions to the jury.
(6) The court erred in sentencing appellant to three (3) years in the Mississippi State Penitentiary.
It is this Court's opinion that no error was committed when the Youth Court of Pontotoc County refused to certify the appellant to the Youth Court of the First Judicial District of Chickasaw County, his resident county. We reach this conclusion after studying the language of Mississippi Code Annotated § 43-21-7 (1972), as follows: "Except as otherwise provided in this chapter, the court shall have exclusive original jurisdiction in all proceedings concerning any delinquent, neglected or battered child residing or being in the county."
The act of selling a controlled substance by the appellant took place in Pontotoc County, Mississippi. Looking to the language of Mississippi Code Annotated § 43-21-7 (1972), we determine that this meets the requirement set forth by the legislature of being in the county; thus, the case was properly before the Youth Court of Pontotoc County. We construe the language of the statute "being in" to mean in criminal matters as being in the county where the scene of the crime is located.
Thus, in keeping with this ruling, there are two places where a juvenile offender can be adjudged a delinquent child under the statutes of this state  one being where the crime was committed, the other being the place where the youth is residing.
If the crime is committed in a county other than the place where a youth is residing, the youth court judge in that county can, in his discretion, transfer the cause to the youth court where the child is residing; or he can retain jurisdiction of the case if he deems it in the best interest of the child; or he may certify the case for prosecution to the circuit court.
We wish to emphasize that if a child is to be certified over to circuit court, certification must be to the circuit court which would have jurisdiction in the county where the crime was committed. This is dictated by Art. 3, § 26, Miss.Const. 1890. Certification to circuit court can be either by the youth court of the county where he is residing or the youth court where the crime was committed.
If a child is to be transferred to another youth court, the transfer hearing must be prior to any adjudicatory hearing. Once an adjudicatory hearing has been held, any further adjudicatory action on the part of either a youth court or a circuit court will constitute double jeopardy. See Breed v. Jones, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975).
There is nothing in the record of this case that reflects a motion was made on behalf of the appellant to have the cause transferred to his home county.
There is no merit in the appellant's assignment that the trial court erred in overruling the appellant's motion to dismiss *326 the indictment. He sought to have this Court rule that the lower court was in error when it refused to sustain his motion to dismiss the indictment based on his denial of a speedy trial. We have said in Baldwin v. State, 297 So.2d 157 (Miss. 1974):
... In Brown v. State, 252 So.2d 885, 887 (Miss. 1971) it was held:
It is a well-settled rule in this state that a motion is at issue without further pleading and that the allegations thereof do not amount to any proof of the facts stated therein. It is the duty of the movant to support his motion by proof and in the absence of proof in support of the motion, the presumption in favor of the correctness of the action of the trial court will prevail. Harvey v. State, 218 So.2d 9 (Miss. 1969).
This Court said in McMillan v. Tate, 260 So.2d 832, 833 (Miss. 1972):
In the absence of any proof in support of the motion we cannot put the trial court in error for overruling the same.
See also Loden v. Joslin, 229 So.2d 825 (Miss. 1969); citing Harvey v. State, 218 So.2d 9 (Miss. 1969).
(297 So.2d at 159).
The record fails to indicate that appellant requested a hearing on his motion, or that any proof was ever adduced in support thereof.
It appears from the record that no objection is raised as to the form of the indictment in the trial court, but the defendant did move the court for a directed verdict because of testimony with reference to another crime for which he was also indicted. The trial judge overruled this motion because it was not timely made. The record shows, however, it was made a short time after the testimony was offered.
The defendant filed a motion in which he alleged that there were two indictments returned by the Grand Jury of Pontotoc County  one indictment in Cause No. 8401 charged the defendant with having sold marijuana, and a second indictment in Cause No. 8402 charged the defendant with having sold barbiturates and methamphetamine. The motion shows that Cause No. 8401 (marijuana charge) was continued and that the state proceeded to trial on the indictment for the alleged sale of barbiturates and methamphetamine (Cause No. 8402).
During the trial on the last charge, Danny Lowery, a narcotics agent, testified that he was introduced to the defendant on August 20, 1972, and on being asked what happened on that date, he testified that they talked about "speed" in bottles under original seal, but that at that time he purchased ten (10) lids of marijuana from the defendant Rickey Walls. He then testified that on another date, August 27, 1972, he went to the trailer where the defendant lived with his father in Chickasaw County, and on being asked what happened in the trailer, he said, "Well, while we were in the trailer, then he brought out a brass pipe and showed it to us and stated that this was a `hash pipe.'" Objection was made to the evidence on the ground that it was an attempt to show that the defendant had "paraphernalia" for which he was not indicted, and was overruled. The trial judge said: "I will instruct the counsel to not go any further into that matter." This evidence was incompetent and prejudicial and should not have been admitted.
The officer testified that he purchased seventy-five (75) tablets from the defendant and paid him thirty-eight dollars ($38.00) for the pills [later identified as barbituric acid phenobarbital and amphetamine.]
The sheriff of Pontotoc County was introduced and testified, over the objections of the defendant, that he called the Narcotics Bureau in Jackson and advised them: "I told them that I had a good bit of narcotics floating around." This was error and should not have been allowed.
*327 When the state rested its case, the defendant moved the trial judge for a mistrial because the state had been permitted to show the commission of another crime at another time, namely, the sale of marijuana. The court overruled this motion.
The defendant then offered as a defense to the charge the contention that he was entrapped into doing a favor for the officer and that otherwise he would not have secured the methamphetamines for the officer. He testified that before this time he had never sold marijuana or drugs to anyone. He was eighteen (18) years of age at the time of the trial. He later married on November 20, 1973, after the date of the alleged crime and now has one daughter.
In Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932) the Supreme Court of the United States stated:
Objections to the defense of entrapment are also urged upon practical grounds. But considerations of mere convenience must yield to the essential demands of justice. The argument is pressed that if the defense is available it will lead to the introduction of issues of a collateral character relating to the activities of the officials of the Government and to the conduct and purposes of the defendant previous to the alleged offense. For the defense of entrapment is not simply that the particular act was committed at the instance of government officials. That is often the case where the proper action of these officials leads to the revelation of criminal enterprises. Grimm v. United States, supra. [156 U.S. 604, 15 S.Ct. 470, 39 L.Ed. 550 (1895)]. The predisposition and criminal design of the defendant are relevant. But the issues raised and the evidence adduced must be pertinent to the controlling question whether the defendant is a person otherwise innocent whom the government is seeking to punish for an alleged offense which is the product of the creative activity of its own officials. If that is the fact, common justice requires that the accused be permitted to prove it. The Government in such a case is in no position to object to evidence of the activities of its representatives in relation to the accused, and if the defendant seeks acquittal by reason of entrapment he cannot complain of an appropriate and searching inquiry into his own conduct and predisposition as bearing upon that issue. If in consequence he suffers a disadvantage, he has brought it upon himself by reason of the nature of the defense. (Emphasis added). (287 U.S. at 451, 53 S.Ct. at 216, 77 L.Ed. at 422.)
In Jones v. State, 285 So.2d 152 (Miss. 1973), we adopted the Sorrells standard for scope of proof.
In the present case, however, evidence tending to show a mental and moral predisposition on the part of the defendant to engage in handling and selling controlled substances (drugs) was offered by the state in presenting its case in chief and admitted by the trial court over objection. This was error as the defense of entrapment at that time had not been interposed. The defendant's motion for a mistrial made at the conclusion of the state's case in chief should have been sustained. As the case must be reversed and remanded on another ground, it is unnecessary to decide here whether the error was rendered harmless when the defendant took the stand in his own behalf and admitted having committed the act charged but claimed that he had been entrapped into doing so by the officers. It should be noted that the mere prefiling by a defendant of instructions dealing with the defense of entrapment does not irrevocably commit him to interpose that defense at his trial. It does not warrant the introduction by the prosecution in presenting its case in chief, of evidence of other acts by the defendant tending to negative the defense by showing a predisposition on his part mentally and morally to engage in the unlawful sale of controlled substances. Such proof only becomes competent after the defense of entrapment *328 actually has been interposed and may include, if not too remote, proof of conduct or acts on the part of the defendant inconsistent with his contention that the act charged was of a nature which he would not have committed at all but for overpersuasion and inducement by the officers. Proof of such acts or conduct on the part of a defendant, where entrapment is the defense, is not rendered incompetent by the fact alone that such acts or conduct may also be the subject of a pending indictment or indictments. Of course, evidence of the fact that such an indictment has been returned would remain incompetent in such a case.
In any event the case must be reversed and remanded for a new trial because of the following occurrence.
The jury returned a verdict in the following language: "We, the jury, find the defendant guilty as charged." The jury was then polled. When the question was put as to whether the verdict was that of each juror, one juror, Learlie Webber, said "No." Upon being asked by the court if she voted to convict, she said: "Well, no sir, I didn't." The court then ordered the jury to retire again. The defendant moved for a mistrial. Thereupon, the trial court ordered the jury returned to the courtroom and undertook to explain to them that it was not meant that all jurors must vote to convict in order to return a "unanimous vote." This explanation, although capable of being understood by a lawyer, perhaps, under the circumstances described, was couched in terms easily capable of being misunderstood by members of a lay jury. After receiving the explanation, the jury again retired and presently returned into open court the verdict: "We, the jury, find the defendant guilty as charged." This time, upon being polled, all jurors, including the juror Learlie Webber, said, "Yes."
We have concluded that under the above stated circumstances the conviction should not be allowed to stand. Consequently the case is reversed and is remanded to the trial court for a new trial, to be conducted in a manner not inconsistent with this opinion.
The case was considered by a conference of the Judges en banc.
Reversed and remanded.
GILLESPIE, C.J., RODGERS, P.J., and PATTERSON, INZER, ROBERTSON, SUGG and BROOM, JJ., concur.
WALKER, ROBERTSON and SUGG, JJ., specially concur.
WALKER, Justice (specially concurring):
I concur in the result reached by the majority that this case must be reversed and remanded because of the trial court's ambiguous language to the jurors as detailed in the opinion.
I also agree that evidence tending to negative a defense of entrapment by showing a predisposition on the part of a defendant, both mentally and morally, to commit an unlawful act should ordinarily be offered after the defense of entrapment has been interposed. However, when a defendant, intentionally or otherwise, by filing instructions dealing with the law of entrapment, lulls the State into prematurely putting on such evidence, and thereafter does, in fact, assert the defense of entrapment, admitting the commission of the unlawful act, that he thereby waives any objection to what would otherwise have been incompetent evidence.
This case demonstrates the desirability of requiring that defendants specifically plead, at arraignment, such special defenses as entrapment and insanity so that all parties and the court may intelligently prepare for trial. Such a requirement would be in the best interest of justice and prevent needless error from being committed.
ROBERTSON and SUGG, JJ., join in this opinion.