DIAZ, Presiding Justice,
for the Court.
¶ 1. This is a case involving the transfer of a criminal case to youth court and the double-jeopardy implications thereof.
¶ 2. On July 31, 2005, J.L.M., sixteen years of age at the time, and cousin B.S., then eight years of age, were sitting in a car outside a house where adult relatives were playing cards. Both children said that they were playing a game of truth or dare. Exactly what happened in the car is contested, but based on the incident, the State brought two charges of sexual battery against J.L.M.
¶ 3. The petition for adjudication originally was filed with the Youth Court of Pearl River County, but the Youth Court dismissed the matter for lack of jurisdiction. J.L.M. later was indicted for two counts of sexual battery in Pearl River County Circuit Court. J.L.M. then filed a Motion to Refer Case to Youth Court, which was opposed by the State.
¶ 4. A full evidentiary hearing was held on the motions on June 8, 2007, wherein testimony was considered by the circuit court judge. The facts underlying the charges were not contained in the record. Therefore, the expert witness called on behalf of J.L.M. was asked to assume that all of the allegations were true. Testimony was offered by a clinical psychologist, J.L.M.’s seventh-grade teacher and his grandfather. After the hearing, the circuit court judge ordered the case to be referred to youth court, stating that “[i]t would be in the best interest of the Defendant, [J.L.M.], and in the interest of justice, for this case to be transferred to Youth Court, for further proceedings.”
¶ 5. Thereafter, the Youth Court of Pearl River County accepted the transfer. J.L.M. was adjudicated a delinquent child and pleaded no contest to two counts of sexual battery on June 12, 2007. J.L.M.’s Order of Disposition, filed on the same day, mandated a fine and a psychological evaluation.
¶ 6. The State appeals the June 11, 2007, circuit court judgment to refer the matter to youth court. The State presents two arguments — that the Fifth Amendment’s protection against double jeopardy does not apply to youth court proceedings, and that the circuit court abused its discretion in ordering the transfer. For the reasons stated herein, we affirm the circuit court’s decision.
Discussion
¶ 7. The State may appeal only when the right to do so is granted by statute. State v. Hicks, 806 So.2d 261, 263 (Miss.2002). Specific to the immediate case, the State may appeal “[f]rom a judgment sustaining a demurrer to, or a motion to quash an indictment, or an affidavit charging erime[.]” Miss.Code Ann. § 99-35-103(a) (Rev.2007). The State argues that the circuit court’s decision in the immediate case meets this standard. Relying on the decision of this Court in State v. U.G., 726 So.2d 151 (1998), in which we found the transfer of a capital case to youth court to be “tantamount to quashing the indictment,” id. at 154, the State insists that this Court should reach a similar conclusion in the case at bar. U.G. offers no guidance for determining when transfers to youth court trigger permissive appeals under Section 99-35-103, although the fact that sexual battery is punishable by life in prison, Miss.Code Ann. § 97-3-101(3) (Rev.2006), suggests that the comparison between U.G. and the case at bar is plausible.
*742 ¶ 8. Ultimately, though, we need not reach that question. The United States Supreme Court has held that the Fifth Amendment protection against double jeopardy applies to youth court proceedings. Breed v. Jones, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). Even if the transfer in this case had been appeal-able at one time, the State lost that opportunity when the youth court entered a final judgment. “Once an adjudicatory hearing has been held, any further adjudicatory action on the part of either youth court or a circuit court will constitute double jeopardy.” Walls v. State, 326 So.2d 322, 325 (Miss.1976).
¶ 9. The State contends that the Fifth Amendment’s protection against double jeopardy, by its very nature, typically applies only to criminal proceedings. Breed, 421 U.S. at 528, 95 S.Ct. 1779. In light of the statutory declaration that “[n]o proceeding by the youth court in cases involving children shall be a criminal proceeding but shall be entirely of a civil nature,” Miss.Code Ann. § 43-21-203(5) (Rev.2004), the State argues that the double jeopardy issue is altogether a red herring. This contention is without merit. “[I]t is clear under [the U.S. Supreme Court’s] cases that determining the relevance of constitutional policies, like determining the applicability of constitutional rights, in juvenile proceedings, requires that courts eschew ‘the ‘civil’ label-of-convenience which has been attached to juvenile proceedings.’ ” Breed, 421 U.S. at 529, 95 S.Ct. 1779 (quoting In re Gault, 387 U.S. 1, 50, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967)).
¶ 10. The youth court having entered a final judgment, the State’s appeal of the transfer from circuit court is barred by the Fifth Amendment. This determination renders the State’s remaining argument moot.
¶ 11. But we should not dispense with this case before noting, as Justice Carlson does so well in his separate opinion, that this is an uneasy result. By virtue of our decision today, a criminal defendant — and worse than that, a child’s sexual assailant — goes away only mildly punished for a serious crime. No judge, no matter how committed to sober application of constitutional protections, rests easy with such a result. But just as when Justice Kennedy of the high court once wrote regarding another difficult recognition of constitutional liberty:
The case before us illustrates better than most that the judicial power is often difficult in its exercise.... The hard fact is that sometimes we must make decisions we do not like. We make them because they are right, right in the sense that the law and the Constitution, as we see them, compel the result. And so great is our commitment to the process that, except in the rare case, we do not pause to express our distaste for the result, perhaps for fear of undermining a valued principle that dictates the decision. This is one of those rare cases.
Texas v. Johnson, 491 U.S. 397, 420-21, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989) (Kennedy, J., concurring).
¶ 12. We are the high court of this state, the last bastion of apolitical reasoning, the last sword drawn against constitutionally forbidden overreaching by the government of Mississippi. It is our sacred duty, above all else, not to mete out seemliness as it strikes our collective fancy on any given Thursday afternoon, but to represent and enforce the law. “Our Government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example.... If the Government becomes a lawbreaker, it breeds contempt for law; it invites every *743 man to become a law unto himself; it invites anarchy.” Olmstead v. United States, 277 U.S. 438, 485, 48 S.Ct. 564, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting).
¶ 13. Today, we fulfill our ancient duty to ensure that the government of this state is restrained against encroachment of our citizens’ constitutional rights, no matter the unhappy result. Would that we continue to honor that charge most of all on days such as this.
¶ 14. Therefore, the decision of the Pearl River County Circuit Court is affirmed.
¶ 15. AFFIRMED.
WALLER, P.J., CARLSON, GRAVES AND DICKINSON, J.J., CONCUR. SMITH, C.J., CONCURS IN PART. RANDOLPH AND LAMAR, J.J., CONCUR IN PART AND IN RESULT. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. CARLSON, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY SMITH, C.J., WALLER, P.J., DICKINSON, RANDOLPH AND LAMAR, JJ.