Hon. James W. McMahon Formal Opinion Superintendent No. 96-F10 Division of State Police State Campus, Bldg. 22 Albany, N Y 12226-5000
Dear Superintendent McMahon:
You have requested a review of Formal Opinion No. 86-F14 rendered in 1986, which concluded that the law enforcement technique known as "reverse drug sale" was not authorized under New York law. For the reasons set forth in your request, we have reviewed the prior analysis in order to respond to your inquiry.
Formal Opinion No. 86-F14 relied on the interrelation of the Public Health Law, Article 33, and the Penal Law, Article 220, for its determination. The focus of this opinion was on the definition and use of the term "unlawful" as applied to the possession and sale of controlled substances. An exemption was found under Public Health Law §3305(1)(b) for what would be an "unlawful" possession or control of controlled substances by members of law enforcement. However, a literal reading of the aforementioned section found no such exemption for what would be described as an "unlawful" sale of such by the same members of law enforcement. This interpretation effectively disallowed what is known as "reverse sales" of drugs by police officers operating under State law.
Public policy and the legitimate government interest in controlling illegal drug trafficking require a reexamination of the Public Health Law and the Penal Law, and the legislative intent underlying both. "Literal interpretation of statutes at the expense of the reason of the law and producing absurd consequences or flagrant injustice has frequently been condemned." Sorrells v U.S., 287 U.S. 435, 446 (1932).
Public Health Law Article 33 acknowledges the many legitimate uses of controlled substances in New York and its purpose is to "govern and control" the making, holding and transferring of such, when necessarily incidental to those uses. Section 3304(1) provides the broadly inclusive regulation and it delineates ten possible means under which controlled substances can be handled for lawful purposes. All other activity involving controlled substances falling outside the scope and purview of section 3304 is deemed "unlawful".
Recognizing the need for exemptions from the regulation, the Legislature carved out four categories of persons to which Article 33 would not apply. Section 3305(1). Of note is the fact that in each category, persons under the exemption are presumed to be handling controlled substances, to whatever degree, in the lawful performance of their employment or official duties. Each type of employment or duty is associated with, or related to, the legitimate regulated uses.
The statutory scheme presented under the Public Health Law has proven successful in achieving its stated purpose, that of regulating the uses of controlled substances.
The stated purpose of the Penal Law, however, differs from that of the Public Health Law, in that the former "proscribes conduct", "provides for public response" and "insures the public safety". Penal Law §1.05(1), (5), (6). Penal Law Article 220 makes criminal, in varying degrees, the knowing and unlawful possession and/or sale of controlled substances. The nexus Article 220 has with the Public Health Law is that the definition of "unlawful" under the Penal Law is written as "in violation of Article 33 of the Public Health Law".
The question remains whether the purpose and intent of the Public Health Law is compatible with the Penal Law or whether one provision can sufficiently offset the implementation of the purpose and intent of the other. Specifically, whether undercover law enforcement officials who come into possession of controlled substances do so "unlawfully", and, concomitantly, would those same officers who sell these substances in the course of their law enforcement duties, do so "unlawfully". Formal Opinion No. 86-F14 answered the first inquiry by grouping all law enforcement members who would "possess" under the Public Health Law exemption. Section 3305(1)(b). This appears to be an overbroad reading of the exemption. Clearly, the provisions of Article 33 should exempt persons whose "lawful performance of their official dutiesrequirepossession and control". Emphasis added. Obvious examples in the law enforcement realm are the chemist who analyzes the controlled substances, the police evidence technician who seals and stores it, the police officer who transports the item between the police agency and the laboratory, the court clerk who maintains it as evidence at trial, the prosecutor in charge of the case, and the jurors who review the evidence.
However, the techniques employed by members of law enforcement in an undercover capacity do not lie squarely within the confines of the exemption provided by section 3305(1)(b). Undercover police officers cannot be categorized as persons routinely subjected to the regulations or exemptions provided by the Public Health Law to the extent that if an investigation requires the employment of enforcement techniques intended to promote the purpose and intent of the Penal Law and is not permitted by a Public Health Law regulatory statute, the essential purpose of the public safety Penal Law statutes should govern in this particular instance.
The resolution of this inherent statutory dilemma is found in the Penal Law under section 35.05. Section 35.05 provides the appropriate vehicle to further the ends of criminal justice without compromising the integrity of the Public Health Law. It states as follows:
 . . . conduct which would otherwise constitute an offense is justifiable and not criminal when such conduct is required or authorized by law or by a judicial decree, or is performed by a public servant in the reasonable exercise of his official powers, duties or functions.
The late Arnold D. Hechtman included in his "Practice Commentaries" under section 35.05, the observation that
 the provision was and is aimed at conduct such as possession of narcotics, policy slips and tear gas, all of which is criminal in general but which obviously should not be regarded in the case of a police officer performing official functions of criminal investigation or maintaining public order.
39 McKinney's Penal Law § 35.05 at 82-3 (1975 ed.)
This statute recognizes that there is conduct which would otherwise be an offense or "unlawful" which is justifiable under certain enumerated circumstances. One such circumstance, when conduct is required or authorized by law, would apply to that mentioned in the exemption under the Public Health Law. Another occasion, when "conduct is performed by a public servant in the reasonable exercise of his official powers, duties or functions", would include the undercover members of law enforcement as "public servants" who in the "reasonable exercise" of their powers enter into conduct such as reverse drug sales, which would otherwise be "unlawful".
Although techniques change in response to the criminal element, the basis for the Penal Law justification provision remains the same. In the past, what was innovative or effective in drug law enforcement may no longer be so, and the adaptability of investigative methods should not be curtailed. Despite the fact that the courts have expressed discomfort in upholding criminal charges or convictions when arrived at by "the government participation in crime", U.S. v. Archer, 486 F.2d 670,
677 (1973), it is well-settled that "the carefully selected use of the contrived crime under appropriately compelling circumstances . . . is not repugnant to a sense of justice". People v. Archer, 68 A.D.2d 441, 449
(2d Dept 1979).
We, therefore, conclude the utilization of the reverse sale law enforcement technique for combatting illegal controlled substance activity is not in contravention of section 3304 of the Public Health Law. Formal Opinion No. 86-F14 is hereby superseded by this opinion.
Very truly yours,
DENNIS C. VACCO, Attorney General